**Deborah WALLACE, derivatively on Behalf of NORTHEAST UTILITIES, Plaintiff,**

v.

**Bernard M. FOX, et al., Defendants.**

**Civil No. 3:96CV772(PCD).**

United States District Court,
D. Connecticut.

May 13, 1998.

---

Marc I. Gross, Pomerantz, Haudek, Block & Grossman, New York City, J. Daniel Saga-rin, Elias A. Alexiades, David A. Slossberg, Hurwitz & Sagarin, Milford, Stephen A. Whinston, Berger & Montague, Philadelphia, PA, Andrew M. Schatz, Jeffrey S. Nobel, Schatz & Nobel, Hartford, Stuart H. Savett, Savett, Fruitkin, Podell & Ryan, Philadelphia, PA, Klari Neuwelt, Law Offices of Klari Neuwelt, New York City, for Plaintiff.

David J. Elliott, Philip Smith Wellman, Day, Berry & Howard, Hartford, CT, for Defendants.

## RULING ON APPLICATION FOR ATTORNEY FEES

DORSEY, District Judge.

Plaintiffs' counsel apply for an award of attorney fees and costs out of the $25 million settlement fund. For the reasons below, the motion is **granted in part**.

### I. BACKGROUND

This is a shareholder derivative action brought on behalf of Northeast Utilities ("NU") alleging breach of fiduciary duties by NU's trustees. NU, a utility company, owns three Millstone nuclear power plants in Connecticut. Defendants allegedly failed to comply with Nuclear Regulatory Commission ("NRC") regulations, which caused the shutdown of the three power plants. The shutdown cost NU millions of dollars, to the detriment of shareholders.

For purposes of settlement, this action was consolidated with six related shareholder derivative actions in Massachusetts and Connecticut state courts, and with a NU shareholder's written demand on the trustees to institute litigation. Defendants filed a motion to dismiss, to which plaintiff never responded. Mediation before the Honorable Robert C. Zampano ("Mediator") was successful. The parties filed a proposed settlement and stipulated motion to dismiss. Under the settlement, defendants' insurers were to pay $25 million to NU. The settlement also included "corporate therapeutics," intended to improve the corporate culture and facilitate compliance with NRC regulations. The settlement provides that plaintiff's counsel's fees from the settlement should not exceed thirty percent of the fund. The settlement

permits counsel to recover costs up to $250,-000. The Mediator submitted memoranda in support of the settlement and the attorney fee request.

Several letters from shareholders questioned the amount of the requested attorney fees. After a hearing on December 18, 1997, the settlement was approved. After oral argument, decision on the fee request was reserved pending submission of supplemental memoranda.

Counsel claim compensation for over fifty attorneys and paralegals from a dozen law firms who spent 7,629.85 hours in connection with the federal and state actions. Counsel seek a fee of 30% of the $25 million settlement fund.[1] Alternatively, if the fee is based on time actually expended rather than as a percentage of the fund, counsel would set a "lodestar" figure at $2,538,011.50. Counsel would then triple the lodestar, as a "multiplier" to compensate for risk and complexity, resulting in a total fee award of $7,614,-034.50.[2] In addition, counsel seek $157,-955.88 for costs reimbursement.

## II. ANALYSIS

### A. Method Of Computation

The appropriate method of calculating attorney fee awards in shareholder derivative and class action lawsuits is controversial. "Common fund" (a/k/a "equitable fund") cases are distinguished from statutory fee shifting cases. In common fund cases, fees are paid from the pool created for the benefit of the class. Statutory fee shifting occurs where a specific statute authorizes a prevailing party's counsel to recover fees from the opponent, in which case the fees are not paid from the class recovery.

The common fund theory permits recovery of fees and costs from the beneficiaries' fund, despite the absence of statutory authority, pursuant to "the historic equity jurisdiction of the federal courts." *Detroit v. Grinnell,* 495 F.2d 448, 469 (2d Cir.1974) ("*Grinnell I* ") (quoting *Sprague v. Ticonic Nat'l Bank,* 307 U.S. 161, 164, 59 S.Ct. 777, 83 L.Ed.

1184(1939)). "Under this theory claims may be filed not only by a party to the litigation, but also by an attorney whose actions conferred a benefit upon a given group or class of litigants." *Id.* This is a common fund case.

"The practice of awarding attorneys' fees is one that has been 'delicate, embarrassing and disturbing' for the courts." *Grinnell I,* 495 F.2d at 469 (quoting *Milwaukee Towne Corp. v. Loew's Inc.,* 190 F.2d 561, 569 (7th Cir.1951), *cert. denied,* 342 U.S. 909, 72 S.Ct. 302, 96 L.Ed. 680 (1952)). "[T]here has been more than a little justification for the dissatisfaction of the lay community with the application of the equitable fund doctrine under Rule 23." *Id.* Phrased more colorfully, "attorneys who are taking advantage of class actions to obtain lucrative fees will find themselves vulnerable to the criticism expressed in the Italian proverb, 'A lawsuit is a fruit tree planted in a lawyer's garden.' " *Grinnell I,* 495 F.2d at 469 (citation omitted).

"For the sake of their own integrity, the integrity of the legal profession, and the integrity of Rule 23, it is important that the courts should avoid awarding 'windfall fees' and that they should likewise avoid every appearance of having done so." *Id.* "Fee awards under the equitable fund doctrine [are] proper only 'if made with moderation and a jealous regard to the rights of those who are interested in the fund.' " *Id* (quoting *Trustees v. Greenough,* 105 U.S. 527, 536, 26 L.Ed. 1157 (1881)). "In making its decision, the district court [should] act 'as a fiduciary who must serve as a guardian of the rights of absent class members.' " *Detroit v. Grinnell,* 560 F.2d 1093, 1099 (2d Cir.1977) ("*Grinnell II* ") (quoting *Grunin v. Int'l House Of Pancakes,* 513 F.2d 114, 123 (8th Cir.1975), *cert. denied,* 423 U.S. 864, 96 S.Ct. 124, 46 L.Ed.2d 93 (1975)).

There are two methods of computing reasonable attorney fee awards: (i) a percentage of the recovery; or (ii) a "lodestar-multiplier." Plaintiff's counsel argue for the percentage method, using the lodestar-multiplier as a cross-check against excessive awards. Which of these is most appropriate is much

---

1. The requested fee averages $1,092.20 per hour for each attorney *and* paralegal.

2. This request averages $997.93 per hour for each attorney and paralegal.

debated. *See* Alba Conte, *Attorney Fee Awards* (2d ed.1993) at 21–129.

Historically, fees in common fund cases seem to have been based on a percentage of the total recovery. *Id* at 31. Subsequent to the 1966 amendments to Rule 23, the number of class action law suits increased substantially. *Id* at 32. Concern grew that percentage based fee awards resulted in windfalls. *Id.*

In 1973, the percentage method was rejected in favor of an award based on counsel's actual work. *Lindy Bros. Builders v. Am. Radiator & Standard Sanitary Corp.,* 487 F.2d 161 (3d Cir.) (*"Lindy I "*) and 540 F.2d 102 (3d Cir.1976) (en banc) (*"Lindy II "*). The *Lindy* approach is known as the "lodestar-multiplier" method. The lodestar (i.e., guiding) figure is based on hours expended and reasonable hourly billing rates. *Grinnell I,* 495 F.2d at 471. The lodestar figure may be augmented (or diminished) by a multiplier to reflect such factors as risk or complexity. *Lindy II,* 540 F.2d at 117.

The primary reason for the lodestar-multiplier method is that:

> unless time spent and skill displayed be used as a constant check on applications for fees there is a grave danger that the bar and bench will be brought into disrepute, and there will be prejudice to those whose substantive interests are at stake and who are unrepresented except by the very lawyers who are seeking compensation.

*Grinnell I,* 495 F.2d at 470–71 (citing *Cherner v. Transitron Elec. Corp.,* 221 F.Supp. 55, 61 (D.Mass.1963)).

A later commissioned task force recommended the percentage method, rather than the lodestar-multiplier which the Third Circuit had invented, *see Report Of The Third Circuit Task Force,* "Court Awarded Attorney Fees," 108 F.R.D. 237, 255–56 (3d Cir. 1985). However, the lodestar-multiplier method continues to be preferred or accepted in several Circuits. *In Re Agent Orange Prod. Liability Litig.,* 818 F.2d 226, 232 (2d Cir.1987) (*"Agent Orange "*); *Grinnell I,* 495 F.2d at 469; *Grinnell II,* 560 F.2d at 1098; *Weinberger v. Great Northern Nekoosa*

*Corp.,* 925 F.2d 518, 526 n. 10 (1st Cir.1991); *Brown v. Phillips Petroleum Co.,* 838 F.2d 451, 452–53 (10th Cir.1988), *cert. denied,* 488 U.S. 822, 109 S.Ct. 66, 102 L.Ed.2d 43 (1988). The D.C. and Eleventh Circuits require the percentage method. *Swedish Hosp. Corp. v. Shalala,* 1 F.3d 1261, 1271 (D.C.Cir.1993); *Camden I Condominium Ass'n v. Dunkle,* 946 F.2d 768, 774 (11th Cir.1991).

The percentage method has the advantage of being simpler to apply. But efficiency cannot be given inordinate weight, despite burdensome caseloads.

The percentage method is a type of contingent fee, which have historically been considered problematic ethically. Peter Karsten, *Enabling The Poor To Have Their Day In Court: The Sanctioning Of Contingency Fee Contracts, A History To 1940,* 47 DePaul L.Rev. 231 (1998). They are altogether forbidden in many civil law countries. The primary concern regarding contingency fees is that they create conflicts of interest between attorneys and clients which may affect an attorney's diligence and judgment.

At the hearing, counsel argued in favor of the percentage method because it creates an "alignment of interests" between class members and counsel. *See* Hearing of December 18, 1997, Tr. at 54. The percentage method was described as favorable for class members because: "The more money we recover for the class members, the more money we will also recover ..." *Id.* In contrast, under the lodestar-multiplier approach there is less incentive for counsel to hold out for the best possible settlement, since counsel's compensation has a "plateau placed upon it." *Id; See also id* at 58–61. Counsel criticized the "inefficiencies that are inherent in a lodestar approach that simply says, 'the more time that you put into the case, the more lodestar that you can justify in the case, the more money that you will get.'" *Id* at 61. This view suggests that the lodestar-multiplier method encourages unnecessary work and/or padding hours, or that attorneys may be less diligent in advocating clients' causes absent a direct financial stake in the outcome. This concept of attorneys is neither documented nor will it be presumed. Neither course of

action is free from scrutiny by clients and the courts.

The Seventh Circuit has articulated the alignment of interest theory:

> The contingent fee uses private incentives rather than careful monitoring to align the interests of lawyer and client. The lawyer gains only to the extent his client gains. This interest-alignment device is not perfect... But imperfect alignment of interests is better than a conflict of interests, which hourly fees may create. The unscrupulous lawyer paid by the hour may be willing to settle for a lower recovery coupled with a payment for more hours. Contingent fees eliminate this incentive and also ensure a reasonable proportion between the recovery and the fees assessed to defendants.

*Kirchoff v. Flynn,* 786 F.2d 320, 325 (7th Cir.1986) (§ 1988 statutory fee shifting case).

There are several problems with the "alignment of interests" theory. First, it assumes that lawyers will be unethical. The question will not be resolved here by an assumption of unscrupulousness in any body of lawyers. That there are unscrupulous lawyers does not warrant a decision based on an assumption that a significant part of the bar of this Court is unscrupulous. Absent a proportionate share of their clients' recovery, the theory presumes that counsel will fail in their ethical obligation to "act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf." Connecticut Rule of Professional Conduct 1.3, *Official Comment.* But professional ethics are self-enforcing, and lawyers are entitled to the presumption of being ethical, until the contrary is shown in specific instances. Just as attorneys are expected to zealously represent their clients irrespective of their own monetary benefit, it is also blatantly unethical for an attorney to pad hours or perform unnecessary work in order to increase his or her fees. It would be a cynical assessment of the legal profession to premise a regimen for awarding attorneys fees on the assumption that Officers of the Court fail to uphold their ethical obligations.

Aside from the dubious ethical underpinnings of the alignment of interests theory, the arguments in support of the theory are not as persuasive as its proponents contend. *Kirchoff* assumes that where the financial stake of the attorney is directly proportional to the client's benefit, class counsel is more inspired to go the extra mile. But there will be no "alignment of interests" if the additional recovery to be gained by counsel's zealous efforts is relatively small for the amount of time expended. Hourly billing may prove a greater benefit to the class in such cases. This is particularly true where the class seeks non-monetary benefits, such as injunctive relief or, as here, "corporate therapeutics," for which the percentage fee provides no compensation. In such cases, the percentage method would be more susceptible to abuse by unscrupulous attorneys.

The assertion in *Kirchoff* that the percentage method "ensure[s] a reasonable proportion between the recovery and the fees assessed to defendants," even if true, is contrary to the Second Circuit requirement of proportionality between *effort* and fees, not between *recovery* and fees. *Grinnell I,* 495 F.2d at 470 ("The starting point of every fee award ... must be a calculation of the attorney's services in terms of the time he has expended on the case.")

The passage quoted from *Kirchoff* uses the term "private incentives" in support of the percentage method. This catch-all invokes the genie of free market forces. However, the cornerstone of any functioning market is informed bargaining power. Class members typically lack both information and bargaining power. That is why class actions exist: To permit collective action where individual action is impeded by lack of information, fragmented bargaining power and restrictive individual transaction costs. A class consolidates and delegates its bargaining power to counsel. When it comes to the attorney fee award, there is a direct conflict of interest between the class and its designated representatives. At this stage, the class is once again uninformed, fragmented and without bargaining power. Reliance on free market forces or "private incentives" to set attorney fees is therefore misplaced. Court supervi-

sion can assure the award of reasonable attorney fees and safeguard the class' interests. *See Agent Orange,* 818 F.2d at 222; Fed.R.Civ.P. 23(e).

It has been argued that "the lodestar formula may exacerbate the problem of cheap settlements. By severing the fee award from the settlement's size, this formula facilitates the ability of defendants and the plaintiff's attorneys to arrange collusive settlements that exchange a low recovery for a high fee award." John C. Coffee, *Understanding The Plaintiff's Attorney: The Implications Of Economic Theory For Private Enforcement Of Law Through Class And Derivative Actions,* 86 Colum. L.Rev. 669, 691 (1986) (footnote omitted). Professor Coffee argues that such collusion is likely to be implicit, not explicit. *Id* at 717. This criticism of the lodestar method is a variant on the "alignment of interests" theory, and is not persuasive for the same reason: Counsel are presumed to uphold their professional and ethical responsibilities. To adopt a fee method that caters to a presumed faithlessness on the part of counsel is tantamount to adopting a lesser standard of professional obligation. Counsel's professional obligation must be enforced strictly.

Counsel also urge the percentage method as an incentive to promote socially beneficial litigation, such as class and derivative actions. That argument equates the effectiveness of the profession's role in the adjudicative process to the size of the fee award. This goal is furthermore not better served by the percentage method than by the lodestar-multiplier method, although awards under the percentage method mysteriously tend to be larger. In any event, the benchmark of fee awards is reasonableness, not the promotion of certain types of law suits.

The percentage method is not more predictable than a lodestar-multiplier. Counsel cannot predict the ultimate amount of a class action award or settlement any better than they can predict the amount of time necessary in a given case. Risk as a factor to be compensated can be adequately accommodated under the lodestar-multiplier method as a multiplier.

■ Policy reasons notwithstanding, the Second Circuit requires use of the lodestar-multiplier method. *Grinnell I,* 495 F.2d at 468–474; *Grinnell II,* 560 F.2d at 1098–1100; *In Re Agent Orange,* 818 F.2d at 222. "[D]istrict courts should place primary reliance on the value of the time actually expended by fee applicants as determined by normal billing rates." *Grinnell II,* 560 F.2d at 1099. "[J]udges determining fee awards should not be unduly influenced by the monetary size of the class settlement or judgment; a large settlement can as much reflect the number of potential class members or the scope of defendant's past acts as it can indicate the prestige, skill, and vigor of the class's (sic) counsel." *Id.*

Some confusion has grown from a footnote in a Supreme Court ruling on a statutory fee which states: "Unlike the calculation of attorney's fees under the 'common fund doctrine,' where a reasonable fee is based on a percentage of the fund bestowed on the class, a reasonable fee under § 1988 reflects the amount of attorney time reasonably expended on the litigation." *Blum v. Stenson,* 465 U.S. 886, 900 n. 16, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). Since *Blum* was a statutory fee—not common fund—case, this statement is *dictum.* It does not say that common fund fee awards *must* use the percentage method. Absent an indication that a dramatic change in the law was intended, the footnote is taken to permit, but not obligate, fee awards in common fund cases based on the percentage method. The Second Circuit's adoption of the lodestar-multiplier method therefore survives the *Blum dictum.*

Counsel cites the Report of Special Master Schwartz from *In Re U.S. Surgical Corp. Secur. Litig.,* slip op., 3:92CV374 (AHN) (adopted by Order of Dec. 21, 1993); *see* Pl.'s Exs. 18 and 19. The Report adopted a sliding-scale percentage method.[3] The Report is not persuasive. First, it is contrary to Second Circuit authority. Second, the Report proposed a percentage fee *prior to* litigation or settlement, rather than after-the-fact as here.

---

**3.** Under this method, the percentage awarded decreases as the fund increases.

*In Re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*; 724 F.Supp. 160 (S.D.N.Y.1989), does state a preference for the percentage method, but recognizes that the lodestar-multiplier approach must be used in this Circuit. *Id* at 163, 170. *In Re Gulf Oil Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588 (S.D.N.Y.1992), rejects the lodestar-multiplier approach and applies the percentage method instead. *Id* at 596–97. However *Gulf Oil* relies in part on the *Blum* dictum discussed above. *Id.* It cites the Third Circuit Task Force Report and quotes the district court fee award in *Agent Orange*, which was reversed. *Id; Agent Orange*, 818 F.2d 216. *Gulf Oil* does not persuasively justify its departure from controlling Second Circuit authority.

Counsel's reliance on *In Re Crazy Eddie Securities Litig.*, 824 F.Supp. 320, 325–27 (E.D.N.Y.1993), is unpersuasive since no authority or rationale is provided to justify its departure from the Second Circuit rule. *Rose v. Cooney*, 5:92CV208 (TFGD), Hearing of September 8, 1994, Tr. at 11–14, relied on the *Blum* dictum and the Third Circuit Task Force Report and is also unpersuasive. The Final Order and Judgment in *Hwang v. Smith Corona Corp.*, slip. op., B:89CV450 (TFGD) (D.Conn. Mar. 16, 1992), cites no authority for its reliance on the percentage method. The same is true of the Final Judgment in *Seidman v. Stauffer Chem. Co.*, slip. op., B:84CV543 (TFGD) (D.Conn. Oct. 21, 1988) (margin endorsement).

Although the Second Circuit requires use of the lodestar-multiplier method, it does not forbid consideration of the total percentage in parallel. Many courts rely on both methods to determine the reasonableness of attorney fee awards. *See, e.g., Union Carbide*, 724 F.Supp. 160. It is inappropriate to rely on the percentage method, and then merely run the multiplier and hourly rate numbers backwards under the facade of lodestar-multiplier analysis in order to rubber-stamp a percentage determination. To avoid such a perception, the reasonableness of the fee award in this case will be determined exclusively under lodestar-multiplier analysis.

## B. Fee Award

### 1. Lodestar

"[F]ees are calculated by taking the number of hours reasonably billed and multiplying that figure by an hourly rate 'normally charged for similar work by attorneys of like skill in the area.'" *Agent Orange*, 818 F.2d at 222 (quoting *Grinnell I*, 495 F.2d at 1098). Fees may also be recovered for paralegal time. *U.S. Football League v. Nat'l Football League*, 887 F.2d 408, 416 (2nd Cir.1989) (citing *Missouri v. Jenkins*, 491 U.S. 274, 109 S.Ct. 2463, 2468–69, 105 L.Ed.2d 229 (1989)).

 Fee applicants must "produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar service by lawyers of reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 895–96 n. 11, 104 S.Ct. 1541. A district judge may rely in part on his or her own knowledge of hourly rates charged in a community and is not limited to the submitted evidence. *Miele v. New York State Teamsters Conf. Pension & Retirement Fund*, 831 F.2d 407, 409 (2nd Cir.1987). Counsel seek fee recovery at hourly rates as high as $550 per hour. Most of the hourly rates requested by counsel are unreasonable and will be reduced.

 In determining an appropriate hourly rate, the Court relies in part on the undersigned's experience and knowledge of legal markets. The length and type of each attorney's experience is taken into account, and where possible, his or her demonstrated skill. The rates are determined on the assumption that each attorney bills approximately 1,800 hours per year and needs a reasonable income to support him or herself and dependents. It is assumed that approximately forty percent of an attorney's income is consumed by overhead. Rates will not be set in reference to those paid by large corporate clients. Corporations are subject to corporate tax rates as high as fifty percent and may deduct legal fees. It is not reasonable to expect unsubsidized shareholders to match corporate clients' abilities to pay legal fees. In determining reasonable hourly rates, the shareholders' lack of bargaining

power is taken into consideration. The attached Appendix lists counsel's requested rates and the rates found by the Court to be reasonable.

■ The quantity of hours billed must be reasonable. Counsel are not entitled to collect for unreasonable duplicative effort. *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (statutory fee shifting case). A Note to plaintiff's Table of Contents of the Compendium of Declarations and Schedules states: "This Compendium does not contain the daily time records submitted *in-camera*. Such material is withheld on work product grounds." The time records were not submitted *in camera*, although Counsel offered to do so at the hearing. It is not clear that counsel have a legitimate basis to decline to file this material on the record. Accordingly, the reasonableness of the hours expended will be determined by the Court based on the evidence on record and on the undersigned's experience, without reference to the daily time records. NU's specific objections are addressed *seriatim:*

· NU objects to counsel's request to recover fees for time spent preparing the fee request. Counsel generally do not seek remuneration for such time, although 34.90 hours billed by one firm, Wechsler Harwood, is apparently attributed to the fee request. There is no evidence of other such charges. Since counsel withdraw this request, these hours will not be considered for the lodestar calculation. However, Wechsler Harwood has subsequently submitted a supplemental declaration seeking reimbursement for 33.90 hours of additional, non-fee related work. These figures offset each other.

· Plaintiff's counsel seek reimbursement for 1,219.90 hours in connection with preparation of pleadings in this action and the related cases. The docket in the district court action reflects seventy-seven numbered entries. Plaintiff filed: a complaint, an amended complaint, seven motions for extension of time, various appearances and motions for admission *pro hac vice*, a memorandum in opposition to a motion to stay discovery, a stipulated motion regarding a

protective order for purposes of mediation, a joint motion to dismiss, a stipulation of settlement, and memoranda in support of settlement. Plaintiff's counsel attended a status conference, for which it is assumed that they prepared an *ex parte* memorandum for the presiding Parajudicial Officer. It is presumed that some effort was put into drafting an opposition to defendants' motion to dismiss, although no such opposition was filed. These 1,219.90 hours do not include memoranda and exhibits prepared for the mediation sessions. There is no evidence of the volume of pleadings filed in the related state cases.

Despite the number of counsel involved, the amount of time billed in connection with pleadings is excessive. Based on the record, as well as the undersigned's experience and familiarity with this case, a reasonable amount of hours to be billed in connection with preparation of pleadings is found to be 600 hours.

· NU objects to counsel's attribution of 2,140 hours to discovery and factual research. It is presumed that the bulk of this time was devoted to factual research. Given the complexity of the underlying issues in this case, and the fact that there were several parallel actions, this amount of time is not unreasonable.

· NU objects to counsel's attribution of 155.45 hours to respond to defendants' motion to stay discovery, 302.75 hours in connection with the motion to dismiss (to which plaintiff never filed an objection), and 120 hours in connection with the Amended Complaint. Although some of these objections may have merit, they are overruled as moot in light of the 619.90 hour reduction discussed above in connection with preparation of pleadings in general.

· NU objects to counsel's attribution of 518.75 hours for legal research. This is not an unreasonable amount of time.

· NU objects to counsel's attribution of 1,407.85 hours allegedly spent to prepare briefs for the mediation sessions, totaling fifty-two pages (not counting extensive appendices). These hours do not include the 867.20 hours for participation in the ses-

sions. The time spent at mediation and negotiation sessions is understandably high because there were so many counsel in attendance. This was not necessarily duplicative since the mediation sessions addressed all six parallel state actions in addition to the district court proceedings. However, the 1,407.85 hours claimed for preparation of the briefs is excessive and, at best, reflects a duplication of effort. The Court finds a reasonable amount of time to be 600 hours, which generously takes into consideration the need review and revise among the numerous attorneys involved.

· NU objects to counsel's attribution of 778.05 hours for preparation of settlement documents. Although a large number, the settlement was a final disposition of all seven actions. It is understandable that numerous counsel had to participate. The figure is nonetheless excessive. The Court finds a reasonable amount of time to be 500 hours.

As a result, the total hours for which counsel may recover is reduced by 1705.80 hours. The lodestar will be corrected for these unreasonably charged hours at an hourly rate which reflects a weighted average of the hourly rates permitted. The requested lodestar of $2,538,011.50 is rejected. After correction for excessive hours and reduction of unreasonable hourly rates, the lodestar is calculated to be $1,361,810.78. *See* Appendix.

### 2. *Multiplier*

■ "Once [the lodestar has been] calculated, the court may, in its discretion, increase or decrease this figure by examining such factors as the quality of counsel's work, the risk of the litigation and the complexity of the issues." *Agent Orange,* 818 F.2d at 222 (citing *Grinnell II*).

"[T]he use of multipliers has become increasingly disfavored." *Berlinsky v. Alcatel Alsthom Compagnie Generale D'Electricite,* 970 F.Supp. 348, 351 (S.D.N.Y.1997). However, courts in this Circuit have awarded multipliers as high as 5.5. *See, e.g., Roberts v. Texaco, Inc.,* 979 F.Supp. 185 (S.D.N.Y. 1997).

■ "The most significant factor in the calculation of an upward adjustment is the risk of the litigation." *Weseley v. Spear, Leeds & Kellogg,* 711 F.Supp. 713, 716 (E.D.N.Y.1989); *Grinnell I,* 495 F.2d at 471. "To award only the lodestar would be to give inadequate encouragement to bring meritorious but risky claims." *Weseley,* 711 F.Supp. at 716. Although this Circuit permits upward adjustments for risk, such adjustments are ethically troubling. Award of a risk multiplier makes beneficiaries of one common fund pay a premium to subsidize unrelated classes which are unsuccessful in their claims or to encourage the bringing of other claims. Multipliers based on risk should be awarded modestly, with a vigilant eye to the interests of the class at hand.

Since quality of counsel's work is presumed to be incorporated into the hourly rates used for the lodestar calculation, upward adjustment on this basis is only proper under "exceptional" circumstances. *Agent Orange,* 818 F.2d at 234.

■ The Court does not find any particularly difficult or novel legal issues would warrant an upward adjustment. Much of the factual groundwork was found in the NRC's regulatory proceedings. There will be no upward adjustment for factual complexity. Nor are there exceptional circumstances warranting an upward adjustment for quality of counsel's work.

■ A modest adjustment for risk is warranted. It is difficult, after the fact, to determine how much risk was involved. There is no evidence indicating what percentage of shareholder derivative actions similar to this one ultimately result in no recovery or settlement. Nonetheless there clearly was a possibility that there would be no recovery.

Counsel's request for a multiplier of three is unreasonable. Based on risk alone, such a multiplier would only be warranted if there were a two-thirds chance of no recovery. Nothing indicates that this case was so risky. Balancing the interests of the shareholders against counsel's legitimate right to be compensated for risk. A reasonable multiplier is found to be 1.5.

### 3. Costs

Counsel seek reimbursement for costs of $157,955.88, including: computer research, travel expenses, mailing costs, photocopying expenses, outside consultants and couriers. Although NU objects to these expenses, it does not point to specific instances of unreasonable charges. Given the scope of the litigation, these expenses are not unreasonable.

### 4. Award

In light of the foregoing, the motion for award of fees and expenses is granted in part, as set forth below:

| Lodestar | Multiplier | | Costs | | Total |
|---|---|---|---|---|---|
| $1,361,810.78 | × 1.5 | + | $157,955.88 | = | $2,200,672.05 [4] |

## III. CONCLUSION

The motion for award of attorney fees is granted in part. Counsel may recover $2,200,672.05 from the settlement fund.

SO ORDERED.

## Appendix

### Lodestar Calculation

| Attorney | Firm | Status | Hours | Requested Rate ($/hr) | Reasonable Rate ($/hr) | Total |
|---|---|---|---|---|---|---|
| Dahlstrom | Pomerantz Haudek | Partner | 28.00 | $ 320.00 | $ 250.00 | $ 7,000.00 |
| Glazer | Pomerantz Haudek | Associate | 78.50 | 165.00 | 150.00 | 11,775.00 |
| Gross | Pomerantz Haudek | Partner | 667.10 | 410.00 | 275.00 | 183,452.50 |
| Grossman | Pomerantz Haudek | Partner | 120.65 | 475.00 | 300.00 | 36,195.00 |
| Hoffman | Pomerantz Haudek | Partner (ret.) | 1.25 | 430.00 | 275.00 | 343.75 |
| Rushd | Pomerantz Haudek | Partner | 40.25 | 380.00 | 275.00 | 11,068.75 |
| Schwartz | Pomerantz Haudek | Associate | 6.25 | 225.00 | 175.00 | 1,093.75 |
| Stoecker | Pomerantz Haudek | Partner | 991.50 | 290.00 | 225,00 | 223,087.50 |
| Eng | Pomerantz Haudek | Paralegal | 29.00 | 135.00 | 75.00 | 2,175.00 |
| Prasad | Pomerantz Haudek | Paralegal | 17.75 | 90.00 | 75.00 | 1,331.25 |
| Savett | Savett Frutkin | Partner | 414.40 | 435.00 | 250.00 | 108,600.00 |
| Frutkin | Savett Frutkin | Partner | 1.50 | 410.00 | 275.00 | 412.50 |
| Podell | Savett Frutkin | Partner | 401.75 | 395.00 | 275.00 | 110,481.25 |
| Ryan | Savett Frutkin | Partner | 1.25 | 375.00 | 275.00 | 343.75 |
| Grossman | Savett Frutkin | Of Counsel | 16.50 | 275.00 | 225.00 | 3,712.50 |
| Davis | Savett Frutkin | Paralegal | 179.90 | 140.00 | 75.00 | 13,492.50 |
| Protas | Savett Frutkin | Paralegal | 0.50 | 130.00 | 75.00 | 37.50 |
| Savett | Savett Frutkin | Paralegal | 2.50 | 75.00 | 75.00 | 187.50 |
| Lewis | Savett Frutkin | Paralegal | 42.80 | 70.00 | 70.00 | 2,996.00 |
| Schatz | Schatz & Nobel | Partner | 571.75 | 375.00 | 275.00 | 157,231.25 |
| Nobel | Schatz & Nobel | Partner | 196.75 | 225.00 | 225.00 | 44,268.75 |
| Harwood | Wechsler Harwood | Partner | 376.40 | 410.00 | 275.00 | 103,510.00 |
| Haber | Wechsler Harwood | Partner | 144.00 | 340.00 | 250.00 | 36,000.00 |
| Quitt | Wechsler Harwood | Partner | 16.90 | 340.00 | 250.00 | 4,225.00 |
| Houston | Wechsler Harwood | Partner | 8.50 | 340.00 | 250.00 | 2,125.00 |
| Rosen | Wechsler Harwood | Associate | 467.40 | 400.00 | 225.00 | 105,165.00 |
| Sawchuk | Wechsler Harwood | Law Clerk | 16.85 | 135.00 | 75.00 | 1,263.75 |
| Mariano | Wechsler Harwood | Paralegal | 6.70 | 135.00 | 75.00 | 502.50 |
| Danielson | Wechsler Harwood | Paralegal | 5.80 | 125.00 | 75.00 | 435.00 |
| Jones | Wechsler Harwood | Paralegal | 13.80 | 95.00 | 75.00 | 1,035.00 |
| Morville | Wechsler Harwood | Paralegal | 2.80 | 135.00 | 75.00 | 210.00 |
| Posner | Wechsler Harwood | Paralegal | 119.30 | 135.00 | 75.00 | 8,947.50 |
| Weiss | Weiss & Yourman | Partner | 281.75 | 495.00 | 275.00 | 77,481.25 |
| Balsam | Weiss & Yourman | Associate | 158.75 | 395.00 | 250.00 | 39,687.50 |
| Smilow | Weiss & Yourman | Associate | 196.50 | 225.00 | 175.00 | 34,337.50 |
| Zwick | Weiss & Yourman | Associate | 79.00 | 225.00 | 175.00 | 13,825.00 |
| Bashian | Law Offices of James V. Bashian | Partner | 149.90 | 350.00 | 275.00 | 41,222.50 |
| Ryan | Law Offices of James V. Bashian | Of Counsel | 58.60 | 300.00 | 275.00 | 16,115.00 |

---

4. Not including costs, this award compensates counsel (and paralegals) at an average rate of $345.57 per hour for the time found to have been reasonably billed.

| | | | | Requested | Reasonable | |
| Attorney | Firm | Status | Hours | Rate ($/hr) | Rate ($/hr) | Total |
| --- | --- | --- | --- | --- | --- | --- |
| Berger | Berger & Montague | Partner | 39.30 | 550.00 | 300.00 | 11,790.00 |
| Wolfe | Berger & Montague | Partner | 31.80 | 450.00 | 300.00 | 9,540.00 |
| Whinston | Berger & Montague | Partner | 134.10 | 385.00 | 275.00 | 36,877.50 |
| Gordon | Berger & Montague | Partner | 18.10 | 385.00 | 275.00 | 4,977.50 |
| Fantini | Berger & Montague | Associate | 133.00 | 260.00 | 200.00 | 26,600.00 |
| Krulik | Berger & Montague | Associate | 17.00 | 260.00 | 200.00 | 3,400.00 |
| Thompkins | Berger & Montague | Of Counsel | 221.00 | 215.00 | 200.00 | 44,200.00 |
| Parker | Berger & Montague | Associate | 230.80 | 200.00 | 150.00 | 34,620.00 |
| Plenn | Berger & Montague | Paralegal | 1.00 | 115.00 | 75.00 | 75.00 |
| D'Andrea | Berger & Montague | Paralegal | 2.00 | 115.00 | 75.00 | 150.00 |
| Bandrowsky | Berger & Montague | Paralegal | 6.00 | 140.00 | 75.00 | 450.00 |
| Telang | Berger & Montague | Paralegal | 88.00 | 140.00 | 75.00 | 6,600.00 |
| Berman | Berman, DeValerio & Pease | Partner | 0.00 | 325.00 | 275.00 | 0.00 |
| DeValerio | Berman, DeValerio & Pease | Partner | 74.30 | 355.00 | 275.00 | 20,432.50 |
| Block | Berman, DeValerio & Pease | Partner | 2.30 | 295.00 | 250.00 | 575.00 |
| Miller | Berman, DeValerio & Pease | Associate | 105.50 | 225.00 | 175.00 | 18,462.50 |
| Solar–Tuttle | Berman, DeValerio & Pease | Associate | 11.20 | 170.00 | 150.00 | 1,680.00 |
| Campbell | Berman, DeValerio & Pease | Paralegal | 2.00 | 100.00 | 75.00 | 150.00 |
| DeFilippo | Berman, DeValerio & Pease | Paralegal | 0.25 | 75.00 | 75.00 | 18.75 |
| Bruce | Berman, DeValerio & Pease | Paralegal | 0.50 | 75.00 | 75.00 | 37.50 |
| Hall | Berman, DeValerio & Pease | Paralegal Assist † | 11.05 | 35.00 | 0.00 | 0.00 |
| Fisher | Garwin, Bronzaft | Partner | 59.00 | 405.00 | 250.00 | 14,750.00 |
| Taus | Garwin, Bronzaft | Partner | 16.25 | 325.00 | 250.00 | 4,062.50 |
| Hurwitz | Hurwitz & Sagarin | Partner | 1.10 | 350.00 | 250.00 | 275.00 |
| Sagarin | Hurwitz & Sagarin | Partner | 129.83 | 350.00 | 250.00 | 32,457.50 |
| Alexiades | Hurwitz & Sagarin | Partner | 47.65 | 250.00 | 200.00 | 9,530.00 |
| Slossberg | Hurwitz & Sagarin | Partner | 11.85 | 250.00 | 200.00 | 2,370.00 |
| Lord | Hurwitz & Sagarin | Paralegal | 16.00 | 60.00 | 60.00 | 960.00 |
| Kilsheimer | Kaplan, Kilsheimer & Fox | Partner | 12.75 | 380.00 | 275.00 | 3,506.25 |
| Fox | Kaplan, Kilsheimer & Fox | Partner | 10.25 | 350.00 | 250.00 | 2,562.50 |
| King | Kaplan, Kilsheimer & Fox | Associate | 60.00 | 250.00 | 175.00 | 10,500.00 |
| Neuwelt | Law Office of Klari Neuwelt | Partner | 169.70 | 410.00 | 275.00 | 46,667.50 |
| Welkis | Law Office of Klari Neuwelt | Associate | 40.60 | 175.00 | 150.00 | 6,090.00 |

| SUBTOTAL | | Total Hours: 7,616.98 | @ Avg. $/hr: | | 230.38 | $1,754,791.00 |
| --- | --- | --- | --- | --- | --- | --- |
| CORRECTION (see Ruling) | | Excess Hours: 1,705.80 | @ Avg. $/hr: | | 230.38 | $ 392,980.22 |

| LODESTAR | | =====> | | | | $1,361,810.78 |
| --- | --- | --- | --- | --- | --- | --- |

---

† It is unclear what a "paralegal assistant" is. It is taken to mean support staff for paralegals. Support staff, such as secretaries, receptionists, word-processors, etc. are customarily not billed to clients at hourly rates. Rather, such costs are covered as overhead. Accordingly, this fee will not be permitted.