## THOMAS SORRENTINO v. ALL SEASONS SERVICES, INC.
### (SC 15884)

Callahan, C. J., and Borden, Palmer, Peters and Leuba, Js.

Argued June 4—officially released August 4, 1998

*Ronald A. Fox*, with whom was *Thomas Collins*, for the appellant-appellee (defendant).

*Brian L. Smith* and *Theodore E. Skowronski*, for the appellee-appellant (plaintiff).

*Opinion*

PETERS, J. Under the Workers' Compensation Act (act), General Statutes § 31-275 et seq., an employee may bring a civil action to recover damages for a retaliatory discharge by his or her employer. General Statutes § 31-290a.[1] In this appeal, the principal issues are the propriety of the trial court's jury instructions concerning the elements of a claim of retaliatory discharge and the justification for its ruling limiting its award of attorney's fees to an amount less than the employee's obligation under his fee agreement with his attorneys. We affirm the judgment of the trial court with respect to its jury instructions, but reverse and remand with respect to the issue of the attorney's fees.

The plaintiff, Thomas Sorrentino, filed a three count complaint against the defendant, All Seasons Services, Inc., his former employer. He claimed that the defendant had: (1) discharged him in violation of § 31-290a; (2) failed to pay his wages in violation of General Statutes § 31-76c;[2] and (3) committed an unfair trade practice

[1] General Statutes § 31-290a provides in relevant part: "(a) No employer who is subject to the provisions of this chapter shall discharge, or cause to be discharged, or in any manner discriminate against any employee because the employee has filed a claim for workers' compensation benefits or otherwise exercised the rights afforded to him pursuant to the provisions of this chapter.

"(b) Any employee who is so discharged or discriminated against may . . . [b]ring a civil action in the superior court . . . ."

[2] General Statutes § 31-76c provides: "No employer, except as otherwise provided herein, shall employ any of his employees for a workweek longer than forty hours, unless such employee receives remuneration for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

under the Connecticut Unfair Trade Practices Act (CUTPA). General Statutes § 42-110a et seq. Only the validity of the first count is currently before us.[3]

A jury returned a verdict in favor of the plaintiff and awarded him economic and noneconomic damages. The trial court accepted the verdict and denied the defendant's subsequent motion to set it aside.

The defendant appealed from the trial court's judgment on the merits. It challenged principally the propriety of the court's jury instructions. We affirm the trial court's judgment against the defendant.

In supplemental rulings, the court awarded the plaintiff attorney's fees and interest based on his offer of judgment, but denied his request for punitive damages. The trial court deferred ruling on the plaintiff's motion for rectification, requesting an additional award of attorney's fees should the judgment be affirmed, until there was a final conclusion to the case.[4] The plaintiff has cross appealed, challenging the amount of the award of attorney's fees and the denial of punitive damages. We reverse the trial court's ruling on attorney's fees.

The parties appealed to the Appellate Court and we transferred the appeals to this court pursuant to Practice Book § 65-1, formerly § 4023, and General Statutes § 51-199 (c).[5] Because they raise entirely independent issues, we will address separately the merits of the appeal and of the cross appeal.

---

[3] The plaintiff withdrew the CUTPA count. The defendant raised no issue with respect to § 31-76c in its motion to set aside the verdict. It has similarly raised no issue with respect to that statute in this court. The issues on the defendant's appeal, therefore, relate only to the § 31-290a claim of retaliatory discharge.

[4] The Appellate Court granted the plaintiff's motion for rectification and denied the relief sought.

[5] General Statutes § 51-199 (c) provides in relevant part: "The Supreme Court may transfer to itself a cause in the Appellate Court. . . ."

## I

The defendant appealed from the judgment of the trial court on three grounds. Its principal claims are that the trial court improperly instructed the jury on: (1) the elements of a claim for retaliatory discharge; (2) the burden of proof in such a case; (3) causation; and (4) damages for emotional distress. In addition, it claims that the plaintiff failed to prove either that he had suffered compensable emotional distress or that there was a basis for the amount awarded to him on that ground. None of these claims persuades us to reverse the judgment.

Although there was contrary evidence at trial, the jury reasonably could have found the following facts. In October, 1993, Ken Corey, a supervisor employed by the defendant, hired the plaintiff to run the hot food service at a cafeteria that the defendant operates at the Becton and Dickinson manufacturing plant in Canaan. The plaintiff agreed to work the night shift six days per week, and the defendant authorized him to work overtime hours.

Many Becton and Dickinson employees had high praise for the plaintiff's job performance. Some of these employees sent Corey letters complimenting the plaintiff's work, two of which Corey discarded instead of placing them in the plaintiff's personnel file.

Although Corey claimed that he had received complaints about the plaintiff, the plaintiff never received any written warnings or reprimands from the defendant. As a general rule, the defendant did not discharge an employee unless he or she had received three written reprimands. The defendant provided reprimand forms for use by its supervisory personnel. Furthermore, despite the defendant's personnel policy requiring periodic performance evaluations, no such evaluation was ever performed for the plaintiff.

In January, 1994, during the plaintiff's work shift at the cafeteria, in the course of moving kitchen supplies, he slipped and fell on ice covered stairs and injured his back. The plaintiff filed a workers' compensation claim for the medical treatment that he received for several weeks after his fall. Some time after the accident, Corey informed the plaintiff that the defendant was concerned about the expense of the plaintiff's workers' compensation benefits and inquired when he would stop his medical treatment.

In the fall of 1994, the plaintiff's work hours increased when, in addition to his regular night shift, he occasionally covered the cafeteria's day shifts. Twice in that period he worked more than ninety hours per week.

In November, 1994, the plaintiff started to experience chest pains and shortness of breath. On two different occasions, the plaintiff waited until the end of his shift to seek emergency medical treatment for these symptoms at a hospital. Hospital staff diagnosed him with acute exhaustion and advised him to reduce his work hours. Even so, the plaintiff missed no work time.

On February 15, 1995, while working at the cafeteria, the plaintiff began to experience severe chest pains, numbness in his left arm, tingling in his hands and shortness of breath. An on-site emergency medical technician called an ambulance to take the plaintiff to the hospital. Before leaving, the plaintiff called Corey at home. The plaintiff apprised Corey of his condition and informed Corey that he was going to the hospital. Corey expressed concern about the loss of sales if the cafeteria were left unattended and questioned the need for an ambulance.

The plaintiff was admitted to Winsted Memorial Hospital, where oxygen was administered and he was placed on heart monitoring equipment. In the emergency room, the plaintiff began to feel better. Against

the advice of the nurse and the attending physician, he left the hospital and returned to close the cafeteria and to secure the cash register. The plaintiff then returned to the hospital and was readmitted in the early morning of February 16, 1995.

The plaintiff was discharged from the hospital later that morning. His physician advised him not to return to work until a further medical evaluation could be completed several weeks later and provided a letter for his employer indicating that the plaintiff was suffering from work-related "burn-out syndrome."

That same day, Corey called the plaintiff to inquire about his medical condition. The plaintiff advised Corey of his physician's diagnosis, of the physician's instructions, and of his inability to return to work until he had received further medical evaluation. He told Corey that he would send him the confirming letter from his physician. Corey replied that he did not care about the letter and informed the plaintiff that the night shift was covered and that he should turn in his keys and his gate card. When the plaintiff asked Corey whether that meant that he was being discharged, Corey said: "I'm letting you go." Corey added: "[T]his isn't the first comp claim that [you've] had; it looks like it's going to be another one."

On the following day, February 17, 1995, the plaintiff asked for a meeting with Corey to clarify the situation. When Corey did not appear at the meeting that he had agreed to attend, the plaintiff sent a letter to Corey and to the defendant's president in which he documented his medical condition and included a copy of the physician's report.

In response, the defendant advised the plaintiff that his employment had been terminated and offered inconsistent grounds for its decision. The first document

issued by the defendant stated that the plaintiff's termination was as a result of reduced hours, despite the fact that the plaintiff's hours at work had increased steadily during his employment. The second document, denominated a "terminated employee check list," had a line for "reason of termination," which was left blank. The third document, an interoffice memorandum under the defendant's letterhead, stated that "[t]his [e]mployee was let go because his job performance was unreliable, worked a lot of unauthorized extra hours and was uncooperative with fellow employees . . . ."

On March 28, 1995, the plaintiff filed a formal workers' compensation claim, which the defendant denied and contested.[6] The plaintiff's medical bills remained unpaid and were sent to collection agencies.

After his physician released him to return to work, the plaintiff was unemployed for nearly one year. In order to survive financially, he was forced to exhaust his savings and sell many personal belongings. The plaintiff was devastated by his loss of employment. He also endured humiliation during employment interviews when he had to explain why he had lost his previous position.

The jury also could have found credible the medical evidence of his physicians that described the plaintiff as suffering from an anxiety syndrome resulting from work-related stress, a condition exacerbated by his discharge. The illness is recurring, and the plaintiff may continue to experience anxiety and panic attacks if he encounters new stressors in the future. The plaintiff probably will have a recurrent need for medication to control future anxiety attacks.

---

[6] A workers' compensation commissioner held six hearings with respect to the plaintiff's claim for workers' compensation. At the time of trial, the plaintiff had received no official final decision on the claim.

At the close of the presentation of evidence, the trial court instructed the jury on the applicable legal principles, including the burden of proof that the law imposed on each party. The court further instructed the jury in response to an inquiry about certain statutory requirements of the act.

## A

We begin with the defendant's claim that, in supplementing its jury instructions in response to a question that arose during jury deliberations, the trial court misinformed the jury on the elements of a claim for workers' compensation. We decline to review this claim because it was not preserved properly at trial. See, e.g., *State* v. *Rogers*, 199 Conn. 453, 461, 508 A.2d 11 (1986); see also Practice Book § 16-20, formerly § 315.[7]

The jury sent the trial court the following question: "Please explain the workers' comp. law, and what constitutes filing a comp. By [the plaintiff] calling Mr. Corey the night he went to the hospital, was that enough to constitute workers' comp?" After consultation with counsel, the judge instructed the jury that "[the plaintiff]'s calling Mr. Corey [the night he went to the hospital] *could* constitute the first step in the process of making a workers' compensation claim." (Emphasis added.)

The defendant argues that the court's response was inadequate because it failed to address the defendant's knowledge or belief at the time of the telephone conversation. The argument is predicated on the assumption that the plaintiff's case rests on a claim of preemptive

---

[7] Practice Book § 16-20, formerly § 315, provides in relevant part: "Requests to Charge and Exceptions; Necessity for

"An appellate court shall not be bound to consider error as to the giving of, or the failure to give, an instruction unless the matter is covered by a written request to charge or exception has been taken by the party appealing immediately after the charge is delivered. . . ."

discharge to avoid a workers' compensation claim, rather than on a claim of retaliatory discharge because of a previous workers' compensation claim. Relying on this predicate, and on the fact that the plaintiff had not filed his second workers' compensation claim before his discharge, the defendant claims that the trial court should have instructed the jury that the defendant's liability was contingent on a finding by the jury that the defendant knew or believed that the plaintiff was about to file such a claim.[8]

There is nothing in the record to indicate that, at trial, the defendant challenged the instructions on the ground now raised on appeal. The defendant participated fully in the discussion of the court's proposed reinstruction of the jury. At that time, the defendant raised no issue relating to the employer's state of mind.[9] The defendant's requests to charge did not raise the issue.

Pursuant to Practice Book § 16-20, formerly § 315, in order to contest a jury charge on appeal, a litigant either must have (1) requested the court to charge on the topic or (2) objected to the charge as given.[10] "By failing

[8] According to the defendant, the trial court's omission was particularly egregious because of related misstatements and omissions in its original jury instructions. We respond, in parts I B and I C of this opinion, to the particular claims that the defendant has raised about those instructions. If there were other instructional errors, we cannot address them for a number of reasons. The defendant's vague allusion to such improprieties has not been briefed adequately, was first raised in its reply brief, and was not preserved by an exception to the jury instructions at trial.

[9] At the time, the defendant asserted only that language should have been added to the instruction to indicate that calling one's employer could be the first step in the process, but does not necessarily constitute filing a workers' compensation claim. The trial judge's instruction to the jury, that the call "*could* constitute the first step in the process of making a workers' compensation claim," is functionally identical to the addition that the defendant requested. (Emphasis added.)

[10] Although earlier case law required the issue also to be preserved by a motion to set aside the verdict, those cases were overruled in *Santopietro* v. *New Haven*, 239 Conn. 207, 211–21, 682 A.2d 106 (1996).

to take an exception to the court's charge to the jury, the [defendant] accepted the instructions as the law of the case." (Internal quotation marks omitted.) *Oakes* v. *New England Dairies, Inc.*, 219 Conn. 1, 12, 591 A.2d 1261 (1991). If the objection is not properly preserved, the challenged instruction will require reversal only if the plain error doctrine applies. See, e.g., *Santopietro* v. *New Haven*, 239 Conn. 207, 216, 682 A.2d 106 (1996).

We are not persuaded that the merits of the issue that the defendant seeks now to raise warrants application of the plain error doctrine. Accordingly, we decline to review this claim of misinstruction. The procedural requirements on which we rely cannot be dismissed as mere technicalities. They serve as an early warning to the opposing party that enables that party to frame its presentation of evidence and argument to the jury. More important, they serve to alert the trial court to possible existing deficiencies and provide an opportunity for redress, if appropriate, while there is still time to do so before discharge of the jury. See *Oakes* v. *New England Dairies, Inc.*, supra, 219 Conn. 7. As we observed in *Kolich* v. *Shugrue*, 198 Conn. 322, 325–26, 502 A.2d 918 (1986), "[e]ven if the issue was raised during the course of a trial and the party has properly preserved the issue for review, the trial court should be given 'a full opportunity to redress any errors which may have occurred at trial before the appellate process is begun.' "

B

We next address the propriety of the trial court's instruction on the plaintiff's burden of proof with respect to his claim of wrongful discharge under § 31-290a. The defendant challenges the trial court's instruction on the elements of proof of discrimination and of causation. These claims, as well, were not preserved adequately at trial.

The trial court instructed the jury that, if a plaintiff makes out a prima facie case of discrimination, and the defendant proffers a legitimate, nondiscriminatory reason for the challenged employment action, the plaintiff can prevail if the jury finds the defendant's proffered explanation to be pretextual. It is undisputed that the court's instruction was entirely in accordance with the law of this state as articulated in *Ford* v. *Blue Cross & Blue Shield of Connecticut, Inc.*, 216 Conn. 40, 53–54, 578 A.2d 1054 (1990); see *Ann Howard's Apricots Restaurant, Inc.* v. *Commission on Human Rights & Opportunities*, 237 Conn. 209, 224–26, 676 A.2d 844 (1996); *Levy* v. *Commission on Human Rights & Opportunities*, 236 Conn. 96, 107–109, 671 A.2d 349 (1996).

The defendant claims that the jury nonetheless was instructed improperly because a subsequent decision of the United States Supreme Court interpreting Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq., has deprived *Ford* and its progeny of precedential value. In *St. Mary's Honor Center* v. *Hicks*, 509 U.S. 502, 510–11, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993), the court modified the shifting burden of proof framework that it had laid out in *McDonnell Douglas Corp* v. *Green*, 411 U.S. 792, 802–803, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), by imposing heightened requirements on Title VII litigants seeking to prove discrimination in mixed motive cases. In *Ford*, we followed the unmodified *McDonnell Douglas Corp.* framework. *Ford* v. *Blue Cross & Blue Shield of Connecticut, Inc.*, supra, 216 Conn. 53–54.

The difficulty with the defendant's claim is that *Hicks* was never cited in the trial proceedings in this case. Neither in its request to charge,[11] nor in its objections

---

[11] The defendant filed a request to charge on proof of discrimination, but its terms were not inconsistent with the charge given by the trial court. Indeed, the request's reference to supporting authority cited only the Con-

to the charge as given, did the defendant directly or indirectly alert the court to its claim.

We are not persuaded that the defendant's belated, unpreserved claim requires reversal under the plain error doctrine. The defendant's claim does not raise an issue of federal statutory or constitutional law. It presumes that, having once looked to a federal precedent to interpret our statute, we will thereafter adopt, in lockstep fashion, subsequent federal reinterpretation of federal law. It is not plain error for a trial court to follow Connecticut law. Plain error requires reversal only in "truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *Williamson* v. *Commissioner of Transportation*, 209 Conn. 310, 317, 551 A.2d 704 (1988); see, e.g., *State* v. *Preyer*, 198 Conn. 190, 198–99, 502 A.2d 858 (1985) (finding plain error when recent legislative change led trial court expressly to preclude jury from considering defense that was in fact preserved by statute). Accordingly, we affirm the judgment of the trial court on this issue.

C

Similar procedural deficiencies impede plenary consideration of the defendant's claim that the trial court improperly failed to give the jury any instruction on the standard of causation governing the wrongful discharge count. According to the defendant, the court should have instructed the jury to employ a "but for" standard

---

necticut cases on which the trial court relied. The request did not refer to the *Hicks* test, either by reciting the new test or by citing *Hicks* itself. See Practice Book § 16-23 (a), formerly § 318, which provides that requests to charge must be in separate paragraphs "each containing a single proposition of law clearly and concisely stated with the citation of authority upon which it is based . . . ."

in its determination of whether the defendant had discharged the plaintiff in retaliation for his filing of workers' compensation claims. As the instruction was given, the defendant argues, the jury might have applied a "substantial evidence" standard, to which the defendant objects.

At trial, the defendant filed a request to charge on causation asking that the trial court instruct the jury that "the plaintiff must prove that he would have kept his job but for his exercise of rights under the Workers' Compensation Act." *Ford* was the only supporting authority that was cited. *Ford* v. *Blue Cross & Blue Shield of Connecticut, Inc.*, supra, 216 Conn. 40. The jury instructions, however, comported with the governing principles expressly set out in *Ford*. The defendant asserts that the *Ford* decision implicitly endorsed a "but for" standard of causation. The relevant language in *Ford* does not support the defendant's proposition. What the court said in *Ford* was not a statement of principle, but a recapitulation of the trial court's jury charge, which the court rejected on other grounds. See id., 55.

For reasons similar to those that we stated previously, in part I A and I B of this opinion, this instructional issue does not warrant application of the plain error doctrine. The defendant has not argued that the trial court's instruction failed to accord with existing Connecticut law. It relies instead on decisions reached in other states, and on secondary authority. Whatever the failure to include a "but for" instruction might purport in other cases, in light of the overwhelming evidence in support of the jury's verdict in this case, a hypothetically improper instruction on this issue might well be harmless. Accordingly, we decline to review the merits of the defendant's claim on causation.

## D

We turn now to the defendant's challenges to the award of noneconomic damages to the plaintiff. These damages provided a remedy for the great emotional distress that the plaintiff allegedly suffered because of his discharge from employment by the defendant. The defendant claims that such damages were unwarranted on three grounds: (1) the jury instructions on emotional damages were improper; (2) the evidence was insufficient to establish causation; and (3) the size of the award was excessive. We reject these claims.

### 1

The defendant first contends that the trial court should not have instructed the jury on recovery for emotional distress because the plaintiff did not plead emotional distress damages in his complaint and did not assert such a claim before the trial. Accordingly, the defendant maintains that, because it was not given timely notice, it was subjected to a "trial by deception."

The defendant's claim cannot be sustained. As the plaintiff observes, the record at trial demonstrates that the defendant did not object to ample evidence of emotional distress that was introduced at trial. Even before trial, during discovery, the defendant received notice of the emotional distress issue when the plaintiff disclosed two medical experts, including a psychiatrist, and made available medical reports from his physicians. The plaintiff further notes in his brief, without contradiction, that the defendant itself argued at trial that the plaintiff's injuries were not compensable because they were entirely emotional. " 'A party cannot present a case to the trial court on one theory and then ask a reversal in the supreme court on another.' " *Grody* v. *Tulin*, 170 Conn. 443, 447, 365 A.2d 1076 (1976), quoting W. Maltbie, Connecticut Appellate Procedure (2d Ed. 1957) § 305. In light of this unchallenged record, the trial court

properly denied the defendant's request for an instruction on damages that would have precluded an award for emotional distress.

## 2

We next consider the defendant's claim that the plaintiff introduced insufficient evidence to establish that the termination of his employment was the cause of his emotional distress. We disagree.

The defendant asserts that the plaintiff introduced little, if any, probative evidence of causation on the emotional distress issue. It emphasizes that the plaintiff's symptoms predated the termination of his employment. It argues that the evidence tying the plaintiff's claimed emotional distress to the termination consisted only of two conclusory medical statements, and hence was insufficient to support the verdict.

We are not persuaded by the defendant's argument. The defendant concedes that both the testimony of the plaintiff's physician and the medical report of a psychiatrist support a finding of causation. In addition, the plaintiff testified to the substantial impact of his discharge on his emotional state,[12] and to the humiliation he endured when he was forced to describe the circumstances of his discharge to potential new employers. Considering the evidence in the light most favorable to sustaining the verdict; *Purzycki* v. *Fairfield,* 244 Conn. 101, 112–14, 708 A.2d 937 (1998); we conclude that the jury reasonably could have found that the loss of employment caused emotional damage to the plaintiff.

## 3

Finally, we consider the defendant's argument that the emotional distress award should be reversed

---

[12] The plaintiff testified that he was "devastated" by the termination of his employment. He also stated: "I lost my self-esteem. Tomorrow didn't

because an award of $115,000 was excessive. We reject this claim as well.

The defendant argues that awarding $115,000 for emotional distress damages was excessive for two reasons. It reminds us that the plaintiff had suffered anxiety attacks prior to the termination of his employment. It contends, furthermore, that the plaintiff failed to prove that he suffered permanent injury owing to the loss of his position with the defendant.

We review this claim with deference to the decisions of the trial court and the jury. "Because the trial court had an opportunity far superior to ours to evaluate the evidence . . . every reasonable presumption is made in favor of the correctness of its ruling . . . ." (Internal quotation marks omitted.) *Bartholomew* v. *Schweizer*, 217 Conn. 671, 687, 587 A.2d 1014 (1991). In this case, the jury, and the trial court in denying the motion to set aside the verdict, agreed that the plaintiff was entitled to emotional distress damages. "The concurrence of the judgments of the judge and the jury, who saw the witnesses and heard the testimony, is a powerful argument for sustaining the action of the trial court." (Internal quotation marks omitted.) *Ford* v. *Blue Cross & Blue Shield of Connecticut, Inc.*, supra, 216 Conn. 57.

The test that governs the propriety of the amount of an award in these circumstances is whether the award falls "somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury was influenced by partiality, prejudice, mistake or corruption." (Internal quotation marks omitted.) *Bartholomew* v. *Schweizer*, supra, 217 Conn. 687. Under this test, the award to the plaintiff was not excessive.

matter to me anymore. I was just totally devastated about the whole situation. I needed help."

The plaintiff testified regarding his emotional distress. The plaintiff's physician also testified that he had prescribed antianxiety medication for the plaintiff, and that the plaintiff may need to continue taking this medication in view of the likelihood that his illness may recur. He stated that the plaintiff may experience further anxiety and panic attacks if the plaintiff encounters new stressors in the future.

A verdict must stand if it is one that a jury reasonably could have returned and the trial court has accepted. See *Ford* v. *Blue Cross & Blue Shield of Connecticut, Inc.*, supra, 216 Conn. 57. Applying this principle, we conclude that the trial court's judgment with respect to the award of damages for emotional distress must stand.

## II

We now turn to the issues raised by the plaintiff on his cross appeal. The plaintiff asserts that the trial court improperly: (1) awarded him attorney's fees substantially lower than the amount the plaintiff's fee agreement with his attorneys requires; (2) declined to authorize additional attorney's fees incurred on appeal; and (3) denied his claim for punitive damages. We agree with only the first of these assertions.

## A

We first consider whether the trial court abused its discretion in awarding attorney's fees in an amount substantially less than the amount required by the plaintiff's fee agreement with his attorneys. We agree with the plaintiff that the trial court's award was insufficient.

The facts relevant to this claim are undisputed. After the jury had returned its verdict, the trial court heard oral argument on the plaintiff's motion for attorney's fees. The plaintiff submitted a fee agreement requiring him to pay one third of any moneys collected on his

behalf.[13] In support of this fee agreement, the plaintiff also submitted hourly billing records documenting his attorneys' investment of $64,054 in time in pursuing the case. The court rendered a judgment for $176,076.80, which included an award of only $30,000 for attorney's fees, rather than the amount of $48,643.57 that the plaintiff was obligated to pay by the terms of the fee agreement. In an articulation, the court explained that it had determined the lesser amount to be appropriate in accordance with its finding that the billing records described work performed by nonattorneys and showed that the plaintiff had been represented by two lawyers, each billing separately for hours worked simultaneously. After the appeals from the trial court's judgment had been filed, the plaintiff entered into a new fee agreement with his attorneys, obligating him to pay, on an hourly basis, additional attorney's fees incurred on appeal.

General Statutes § 31-290a (b) (1)[14] directs courts to award reasonable attorney's fees to employees who prevail in plenary civil actions for discriminatory or retaliatory discharge but leaves discretion in the courts to determine the precise amount of the fees to be awarded. We review a trial court's fee award for abuse of discretion. *Rizzo Pool Co.* v. *Del Grosso*, 240 Conn. 58, 77–78, 689 A.2d 1097 (1997).

The issue before us is the extent to which a reasonable fee agreement should be the basis for a court's award of reasonable attorney's fees. This question requires us to determine: (1) whether the fee agreement in this case was reasonable; and (2) if so, whether the trial court properly exercised its discretion to depart from its terms.

---

[13] The plaintiff was responsible for all costs incurred.

[14] General Statutes § 31-290a (b) (1) provides in relevant part: "Any employee who prevails in such a civil action shall be awarded reasonable attorney's fees and costs to be taxed by the court . . . ."

Rule 1.5 (a) of the Rules of Professional Conduct lists the factors that ordinarily determine the reasonableness of an attorney's fee. These factors include the time and labor required, the novelty and difficulty of the questions involved, and the fee customarily charged in the locality for similar legal services.[15] See *Balkus* v. *Terry Steam Turbine Co.*, 167 Conn. 170, 179–80 n.8, 355 A.2d 227 (1974) (addressing without reaching issue of reasonableness of attorney's fees awarded by workers' compensation commissioner), and *Steiger* v. *J. S. Builders, Inc.*, 39 Conn. App. 32, 38, 663 A.2d 432 (1995) (reasonable attorney's fees under CUTPA).

The plaintiff claims that the trial court ignored several factors relevant to the reasonableness of the fee agreement in this case. It cites: (1) the plaintiff's personal obligation, under the fee agreement, to pay legal fees of $48,643.57, calculated as one third of the judgment; (2) the work performed by his attorneys, as documented by their billing records, which, in light of prevailing hourly rates, could have been billed at $60,054 without the fee agreement; (3) the customary reliance, in tort actions in Connecticut, on contingency fee arrangements of one third of the plaintiff's recovery; and (4) the award of attorney's fees in similar workers' compensation cases. The plaintiff further argues that

[15] Rules of Professional Conduct 1.5 (a) provides: "A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:

"(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

"(2) The likelihood, if made known to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

"(3) The fee customarily charged in the locality for similar legal services;

"(4) The amount involved and the results obtained;

"(5) The time limitations imposed by the client or by the circumstances;

"(6) The nature and length of the professional relationship with the client;

"(7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and

"(8) Whether the fee is fixed or contingent."

the court's ruling contravened the act's remedial purpose of protecting workers who are victims of discrimination. See *Herman* v. *Sherwood Industries, Inc.*, 244 Conn. 502, 511, 710 A.2d 1338 (1998). Neither at trial, nor on appeal, has the defendant challenged the accuracy of the plaintiff's representations to the court.

The trial court, sua sponte, departed from the plaintiff's fee agreement and awarded the plaintiff only $30,000 in attorney's fees. In response to a request for an articulation of its reasoning, the court said that a downward modification was justified by the billing records, which described work performed by nonattorneys and included separate billing for two lawyers for work performed simultaneously. It is significant that the court made no finding that the fee agreement itself was unreasonable in any respect.

This record compels the conclusion that the plaintiff's fee agreement was reasonable. The question that remains is whether the trial court abused its discretion in failing to award attorney's fees in accordance with the reasonable fee agreement. That question must be answered in the affirmative.

A trial court should not depart from a reasonable fee agreement in the absence of a persuasive demonstration that enforcing the agreement would result in substantial unfairness to the defendant. The reasons proffered by the trial court in this case are insufficient to meet this standard. It is not unreasonable per se for attorneys to engage and to bill clients for the services rendered by nonlawyers. It is likewise not unreasonable per se for two attorneys representing the same client to bill separately for the individual services provided by each, regardless of whether these services were performed at different times or simultaneously. In the absence of sustainable grounds for departure from a reasonable fee agreement, the trial court abused its discretion in

its fee award. We therefore direct the trial court, on remand, to order the payment of additional attorney's fees in accordance with the fee agreement for the conduct of the trial.

B

The plaintiff also asks that we remand the case to the trial court for an award of attorney's fees incurred on appeal. He argues that the term "civil action" in § 31-290a (b) (1) encompasses an appeal and thus that he is entitled to reasonable attorney's fees not only for a trial in which he prevailed but also for an appeal if he prevails. The trial court deferred ruling on the plaintiff's request until the conclusion of this case on appeal.

The principles governing the award of appellate attorney's fees are well established in this state. A prevailing party may recover such fees only if an appellate fee award is authorized by either statute or contract. *Gionfriddo* v. *Avis Rent A Car System, Inc.*, 192 Conn. 280, 297, 472 A.2d 306 (1984); *Neiditz* v. *Housing Authority*, 42 Conn. App. 409, 413, 679 A.2d 987 (1996). The decision whether to award such fees rests, in the first instance, in the exercise of discretion by the trial court. *Torres* v. *Waterbury*, 30 Conn. App. 620, 626–27, 621 A.2d 764 (1993).

The relevant issue of law, which the plaintiff has identified correctly, requires a construction of the term "civil action" in § 31-290a (b) (1). We have not decided previously whether this term includes appeals. Because this important issue has been briefed only by the plaintiff, and because the amount of an appellate fee award cannot, in any case, be determined on appeal, we remand all issues concerning appellate attorney's fees to the trial court for its plenary consideration.

C

Finally, the plaintiff asserts that the trial court abused its discretion in failing to award punitive damages. He

claims that the defendant's conduct in terminating the plaintiff's employment and in handling the plaintiff's workers' compensation claims was so egregious as to compel an award for punitive damages.[16] We affirm the trial court's rejection of this claim.

Under § 31-290a (b) (1),[17] whether to award punitive damages is an issue left to the discretion of the trial court. To support an award of punitive damages, the evidence must reveal "a reckless indifference to the rights of others or an intentional and wanton violation of those rights." (Internal quotation marks omitted.) *Gargano* v. *Heyman*, 203 Conn. 616, 622, 525 A.2d 1343 (1987).

In this case, the trial court did not award punitive damages because it found that the defendant's actions were neither egregious nor outrageous, nor the result of reckless or wanton disregard of the plaintiff's rights. We review the trial court's decision to determine whether the court abused its discretion. Id. We conclude that there was no such abuse of discretion. The trial court is in a far better position than are we to evaluate the witnesses and the other evidence presented. On appeal, we will interfere with its exercise of discretion only in cases of manifest abuse or injustice. Id. Although the defendant was found to have violated § 31-290a, the record does not justify setting aside the court's finding that the defendant's conduct did not warrant punitive damages. Accordingly, we affirm the trial court's denial of punitive damages.

The judgment is affirmed in part; the judgment is reversed with respect to the award of attorney's fees

---

[16] He also points to inconsistencies in the defense testimony at trial.

[17] General Statutes § 31-290a (b) provides in relevant part: "Any employee who is so discharged or discriminated against may . . . (1) Bring a civil action in the superior court . . . . The court may also award punitive damages. . . ."

and the case is remanded for further proceedings limited to the issue of the plaintiff's recovery of attorney's fees at trial and on appeal.

In this opinion the other justices concurred.