[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In this action, the plaintiffs move for summary judgment to CT Page 5085-bo enter in their favor as there is no issue of fact that the defendant is liable to the plaintiffs under the Connecticut Uniform Securities Act. The plaintiffs Priscilla Weisbart, Beverly King and Phyllis E. Suydam are three individuals who separately purchased promissory notes from the defendant Bruce I. Harlan, a licensed insurance agent in the state of Connecticut. At some point after the purchase of the notes the plaintiffs each tendered her notes to the defendant and received no response. The plaintiffs brought the action and seek summary judgment under General Statutes § 36b-29 (a), claiming that the defendant was not registered under General Statutes § 36b-6 and that he engaged in securities sales in violation of that act.
Summary judgment must be granted if the pleadings, affidavits, and other documentary proof show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. P.B. § 17-49; Suarez v. DickmontPlastics Corp., 229 Conn. 99, 105 (1994); Telesco v. Telesco,187 Conn. 715 (1982); Yanow v. Teal Industries, Inc., 178 Conn. 262
(1979). A "material" fact is one which will make a difference in the outcome of the case. Hammer v. Lumberman's Mutual CasualtyCo., 214 Conn. 573, 578 (1990). In ruling upon a summary judgment motion, the court merely determines whether an issue of fact exists, but does not try the issue if it does exist. Michaud v.Gurney, 168 Conn. 431 (1975).
The purpose of summary judgment is to eliminate the delay and expense accompanying a trial where there is no real issue to be tried.Dowling v. Kielak, 169 Conn. 14, (1970); Dorazio v. M.B. Foster Electronic Co.,157 Conn. 226 (1968). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." Connecticut Bank Trust Co. v. CarriageLane Associates, 219 Conn. 772, 780-781 (1980).
The plaintiffs filed this motion on February 7, 2000, with a memorandum of law and supporting affidavits and a certification from the office of the banking commissioner. The motion was scheduled for a hearing on February 28, 2000. On that date counsel for all parties appeared, and the defendant filed a memorandum in opposition. Prior to hearing argument that day, this court approved an agreement of the parties that the plaintiffs' counsel would file a reply memorandum within ten days and, thereafter, the court would act upon the motion without oral CT Page 5085-bp argument. The plaintiffs filed its supplemental memorandum on March 9, 2000.
The following facts pertinent to this motion are undisputed and are found in the pleadings and supporting affidavits. All three plaintiffs knew the defendant because they had bought insurance and annuities from him. From December 1998 to July 1999, the defendant sold to the plaintiffs various promissory notes which the defendant recommended to each plaintiff as investments. The makers of these notes were Sebastian International Enterprises, Inc. and World Vision International, Inc. The notes were due and payable within nine months. On September 14, 1999, the defendant wrote to each plaintiff, informing them that as investors in Sebastian International Enterprises, Inc. and/or World Vision they should know that "these companies are having severe cash flow problems or may be fraudulent." The defendant's letter went on to state the following:
 I am indeed as shocked as you all are, as Suzanne and I had invested heavily in the region of six figures. We heartily wish that we had never become involved with these companies and recommended these investments to you, our friends and neighbors.
 In an effort to recover your investments, we have retained an attorney expert in this field who has been very successful in the recovery of funds for investors who have been defrauded. His name is Andrew Coté and he practices here in Sharon. Attached is a copy of a letter for Attorney Coté where he describes how the Securities and Exchange Commission (a Federal Agency) is already investigating this matter and what he will be doing in the next months.
On September 16, 1999, the defendant's attorney, Andrew C. Coteacute, wrote to each plaintiff, attaching a litigation release from the Securities and Exchange Commission announcing that on August 19, 1999, it obtained emergency relief halting a Ponzi scheme conducted by a company, namely Sebastian International Enterprises, and a husband and wife team. The letter included the following:
 Re: Alleged Fraudulent Sale of Securities of Sebastian International Enterprises and Vision Entertainment
 As you will see from Bruce Harlan's letter, he and his wife, CT Page 5085-bq Suzanne, have retained my firm to represent them and attempt to recover the funds you invested in Sebastian International Enterprises, Inc., ("SIE"), Sebastian International Life 101 and/or World Vision Entertainment. I realize that this must be a terrible shock to you and regret that this is the reason why I am writing to you at this time.
At this time my firm is trying to determine:
 1. If the principal of the investors notes is guaranteed by a legitimate company.
 2. Exactly what the Federal and State regulatory agencies have discovered in their investigations.
 3. Whether the companies in which the money was invested are economically sound and whether or not they may still be capable of paying their notes.
4. Other related issues involved in this matter.
 My firm is in contact with the State Securities Agencies and the Securities and Exchange Commission including the Receiver of SIE and its assets. We are gathering all the information needed to investigate this matter and to maximize the recovery of investor funds. I wish I could say that this is a quick process but my experience has shown that it can take anywhere from several months to a few years before the funds are located and any remaining monies are returned to the investors.
On October 11, 1999, through counsel, the plaintiffs tendered "all right, title and interest in the notes for consideration paid and interest contemplated by Connecticut General Statutes § 36b-29, less the amount of any income received on the security." As confirmed by the office of the banking commissioner, the defendant is not registered as a broker-dealer pursuant to General Statutes § 36b-6. The defendant did not comply with plaintiffs' request, and the plaintiffs brought this action.
In their motion for summary judgement the plaintiffs argue that based upon the above undisputed facts, they are entitled to the remedy set forth under General Statutes § 36b-29 (a) which provides:
 (a) Any person who (1) Offers or sells a security in CT Page 5085-br violation of subsection (a) of section 36b-6; . . . is liable to the person buying the security, who may sue either at law or in equity to recover the consideration paid for the security, together with interest at eight per cent per year from the date of payment, costs and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security, or for damages if he no longer owns the security.
General Statutes § 36b-6 (a) provides that "no person shall transact business in this state as a broker-dealer unless he is registered under sections 36b-2 to 36b-33, inclusive." A broker-dealer is defined in General Statutes § 36b-3 (5) as "any person engaged in the business of effecting transactions in securities for the account of others or for his own account." A security is also defined in the statutory scheme:
 "Security" means any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, interests of limited partners in a limited partnership, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, certificate of interest or participation in an oil, gas or mining title or lease or in payments out of production under such a title or lease, or, in general, any interest or instrument commonly known as a "security", or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing. "Security" does not include any insurance or endowment policy or annuity contract issued by an insurance company which is subject to regulation by the Insurance Commissioner.
General Statutes § 36b-3 (17).
The plaintiffs argue that because it is undisputed that the defendant was not registered as a dealer/broker under General Statutes § 36b-6 when he recommended and sold the subject notes to the plaintiffs, they are entitled to the relief under § 36b-29 (a) as a matter of law. The defendant does not dispute that he was not registered as a dealer/broker under the statute but does dispute that he the notes he sold to the plaintiffs are CT Page 5085-bs "securities." He also argues that the amount of attorney's fees the plaintiffs seek under the statute is excessive.
The defendant claims that the notes he sold to the plaintiffs were not securities so that he is not subject to the sanctions of General Statutes § 36b-29a. He argues this notwithstanding the clear language of general Statutes § 36b-3 (17), "any note" cannot be read literally but must be interpreted under federal law. As noted by the plaintiffs, in claiming an exemption under this statutory scheme, the defendant has assumed the burden of proving it. See General Statutes § 36b-21 (g). The defendant states that because the Connecticut Uniform Securities Act (CUSA) was modeled after the securities act of 1934, the court must look at the federal case law interpreting that act. There is no authority cited by the defendant for this proposition. In fact, Connecticut adopted the Uniform Securities Act, and in the annotation to that model act the author indicates that the definition of "security" is based upon the definition found in the Securities Act of 1933, which is different from that found in the Securities Act of 1934. Connecticut includes in its definition of security "any note" and "any evidence of indebtedness." The Securities Act of 1934 does not include the latter. The federal cases cited by the defendant interpreting the 1934 act are accordingly not applicable to this issue.
Further, and more significantly, our principles of statutory interpretation do not support the defendant's position. If the statutory language "is clear and unambiguous, we will interpret it in accordance with its plain meaning absent a compelling reason to the contrary." Office of Consumer Counsel v. Dept. ofPublic Utility Control, 252 Conn. 115, 121 (2000). The defendant has presented no compelling reason that the court should interpret "any note" in a manner not to include the notes he sold to the plaintiffs. In fact, the plaintiffs have provided certified copies of cease and desist orders dated January 27, 2000, and March 6, 2000, issued by the banking commission, which is empowered to administer the provisions of CUSA, wherein the commission has concluded that these notes are securities. Officeof Consumer Counsel v. Dept. of Public Utility Control, supra,252 Conn. 120 ("Ordinarily, this court affords deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes").[1] The court finds that the defendant has failed to sustain his burden of proving that the notes in question were not securities. CT Page 5085-bt
There is no genuine issue as to any material fact that the defendant is subject to the provisions of General Statutes § 36b-29 because he was not registered as a dealer/broker and he sold securities to the plaintiffs.[2]
The defendant also claims that the plaintiffs' request for attorney's fees in the amount of $39,845.04 is excessive, because the plaintiffs' attorney's affidavit shows only $12,758 worth of time expended by him. In Russell v. Dean Witter Reynolds, Inc.,200 Conn. 192, 195-96 (1986), the court noted that General Statutes § 36-29 "provides for the recovery of attorney's fees in order to encourage the enforcement of CUSA by victims of improper securities transactions who might not otherwise be able to afford to do so." Here, the plaintiffs' attorney has averred in his affidavit that his law firm was retained in a written agreement that the fee would be one-third of the gross award or settlement. Under Sorrentino v. AllSeasons Service, Inc., 245 Conn. 756, 776
(1998), the court rejects the defendant's claim. "A trial court should not depart from a reasonable fee agreement in the absence of a persuasive demonstration that enforcing the agreement would result in substantial unfairness to the defendant." Id. The fee agreement of one-third the recovery is a reasonable agreement. The defendant has shown no substantial unfairness would result by enforcing that agreement in light of the remedial nature of this statutory action.
The court grants the plaintiffs' motion for summary judgment. Judgment may enter as to each plaintiff as follows:
1. As to Priscilla Weisbart
 (a) Purchase on 5/24/99 $10,000 payment plus 8% interest through 4/11/00 ($707.37) . . . . . . . . . . . . . . . . . . . . . $10,707.37
 (b) Purchase on 6/18/99 $10,000 payment plus 8% interest through 4/11/00 ($652.62) . . . . . . . . . . . . . . . . . . . . . $10,652.62 Total . . . . . . . . . . . . . . . . . . . . . . . $21,359.99 Income Received on all Notes . . . . . . . . . . . - 246.30 __________ Total . . . . . . . . . . . . . . . . . . . . . . . $21,113.69 CT Page 5085-bt
2. As to Phyllis E. Suydam
 (a) Purchase on 1/2/99 $50,315.82 payment plus 8% interest through 4/11/00 ($5,117.48) . . . . . . . . . . . . . . . . . . . . $55,433.30
 (b) Purchase on 2/8/99 $21,996.14 payment plus 8% interest through 4/11/00 ($2,058.61) . . . . . . . . . . . . . . . . . . . . $24,054.75 Total . . . . . . . . . . . . . . . . . . . . . . . $79,488.05 Income Received on all Notes . . . . . . . . . . . - 3,817.61 __________ Total . . . . . . . . . . . . . . . . . . . . . . . $75,670.44
3. As to Beverly King
 (a) Purchase on 7/8/99 $23,115.00 payment plus 8% interest through 4/11/00 ($1,406.68) . . . . . . . . . . . . . . . . . . . . $24,521.68 __________ Total . . . . . . . . . . . . . . . . . . . . . . . $24,521.68
The court awards attorneys fees in the amount of $39,845.04 and costs to the plaintiffs.
DiPentima. J.