Atiya K. **SAMPLE**, Plaintiff,

v.

**WAL–MART STORES, INC.,**
**et al., Defendants**

No. 3:01CV545 (WWE).

United States District Court,
D. Connecticut.

Jan. 13, 2003.

Atiya K. Sample, Bridgeport, CT, Pro se.

Rebecca L. Johnson, New Haven, CT, for Plaintiff.

Catherine L. Moreton, Brown Raysman Millstein Felder & Steiner, Hartsford, CT, Joel L. Finger, Gregory B. Reilly, Jennifer Liddy Green, Brown, Raysman, Millstein, Felder & Steiner, New York City, for Defendants.

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

EGINTON, Senior District Judge.

This action arises from a complaint of employment discrimination filed with the Connecticut Commission on Human Rights and Opportunities ("CHRO") and the Equal Employment Opportunity Commission ("EEOC") by the plaintiff against defendant Wal–Mart. Upon obtaining releases from the CHRO and EEOC, plaintiff filed this action alleging racially motivated discrimination, pursuant to the Connecticut Fair Employment Practices Act ("CFEPA"), C.G.S. §§ 46a–60 (a)(1) [Count One], Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.2000e, *et seq.* [Count Two]; and a retaliation claim based on violation of her right to free speech pursuant to C.G.S. § 31–51q, the First Amendment of the United States Constitution, and Article One, Section Four of the Connecticut Constitution [Count Three].

Pending before the Court is defendant Wal–Mart's motion for summary judgment. For the reasons set forth below, the defendant's motion will be granted.

## FACTS

The plaintiff, an African–American female, brings this action alleging racial discrimination based upon the termination of her employment as assistant manager at the Shelton, Connecticut, Wal–Mart store.

The plaintiff's association with Wal–Mart began when Wal–Mart interviewed her when she was in college, and hired her to join its six-month management plan after graduation. In June, 1998, plaintiff joined Wal–Mart's training program, and as part of the training, she was assigned to work in Wal–Mart's Newnan, Georgia, store.

After her training was complete, she was appointed assistant manager. The plaintiff requested, and received, transfer to the Shelton, Connecticut, store which is a ten-minute drive from her hometown of Bridgeport. At the Shelton store, the racial composition of the non-salaried workers was approximately 57% white, 28% African American, and the remaining 15% were members of other minority groups. Sample's immediate supervisors were Caucasian, but of the five salaried assistant managers at the Shelton store, two were African American, the plaintiff and a male, Robert Davis.

The Shelton store and ninety to one hundred other Wal–Mart stores in Connecticut, New Jersey, Rhode Island and parts of New York and Pennsylvania were overseen by Castural Thompson, an African–American male. Thompson's office was at Wal–Mart corporate headquarters in Bentonville, Arkansas. The plaintiff contacted Mr. Thompson on a regular basis regarding her dissatisfaction with events in the Shelton store, even after Mr. Thompson instructed her to cease.

The plaintiff alleges that her termination was discriminatory and retaliatory in nature, and that her Caucasian superiors created a hostile work environment, consistently undermining her authority. In addition, the plaintiff claims that the defendant's Caucasian employees were allowed to steal time, submit false records, and disregard orders issued by management in general without fear of discipline, but the plaintiff was repeatedly disciplined, and finally terminated, for bringing such misconduct to the attention of her supervisors.

The plaintiff sets forth a litany of specific incidents, covering the time span from September 11, 1998, through her termination on August 31, 1999. On February 22, 2002, the Court dismissed with prejudice factual allegations in Counts One and Two that occurred in Georgia in 1998, and dismissed Count Three in its entirety as to all parties, with prejudice.

## DISCUSSION

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. *American International Group, Inc. v. London American International Corp.,* 664 F.2d 348, 351 (2d Cir.1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, then summary judgment is appropriate. *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505.

■ To survive summary judgment, the plaintiff must first establish a *prima facie* case of discrimination by a preponderance of the evidence. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). If she meets this *prima facie* burden, the burden of production then shifts to the defendant, which must rebut the presumption by articulating a legitimate, non-discriminatory reason or reasons for its action. To meet its burden, the defendant need do no more than offer an explanation and the presumption raised by the plaintiff's *prima facie* case is rebutted and it drops from the case. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

■ The burden then shifts to the plaintiff, who must then show that the defendant's articulated legitimate, non-discriminatory reasons are false, and more likely than not discrimination was the real reason for the adverse employment action. The burden of proving intentional discrimination remains at all times with the plaintiff. This burden-shifting framework applies equally to the plaintiff's Title VII and Connecticut state law claims. *Sorrentino v. All Seasons Services, Inc.,* 245 Conn. 756, 767, 717 A.2d 150 (1998).

■ To prove a Title VII racial discrimination claim, the plaintiff must prove the following elements to make out a *prima facie* case: (1) she is a member of a protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. *Fisher v. Vassar College,* 114 F.3d 1332, 1344 (2d Cir.1997).

■ Connecticut case law interprets the Connecticut General Statutes to set forth a similar set of elements as those required by Title VII: to establish a prima facie claim of disparate treatment under a facially neutral employment policy, it is necessary for the employee to produce evidence of four elements: (1) she was a member of a protected class; (2) she was qualified for her position; (3) she was discharged; and (4) the termination occurred under circumstances giving rise to an inference of discrimination. *Shumway v. United Parcel Service, Inc.,* 118 F.3d 60, 63 (2d Cir.1997).

C.G.S.A. § 46a–60 also states in pertinent part that:

(a) It shall be a discriminatory practice in violation of this section:

(1) For an employer, by the employer or the employer's agent, except in the case of a bona fide occupational qualification or need, to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment because of the individual's race

. . . .

In the present case, the parties do not materially disagree with the facts presented. Wal–Mart does not deny that any of the enumerated incidents took place, and in each instance has articulated non-pretextual reasons why the company took the actions it did. In fact, the Court discerns a pattern of the company erring on the side of caution in Sample's case, by allowing her to bypass her immediate Caucasian supervisors and appeal to the African American regional manager for what might be considered trivial matters.

■ Sample has clearly proven two of the four elements of a Title VII violation, that she is a member of a protected class, and that she suffered an adverse employment action, but she has failed to submit any evidence of racial discrimination. Construing the evidence in the light most favorable to the non-moving party, as the Court is required to do, the plaintiff is

undone by her own words, contained in the paper trail of memos to her supervisors, which never mention racial discrimination. Only in one memo does she state she feels discriminated against, but the reason for that feeling of discrimination is not articulated as racially motivated. Even if the Court construes the evidence in Sample's favor that she has met her burden of proof that she was qualified for her position, she has not proven that the adverse action, her termination from employment, occurred under circumstances giving rise to an inference of discrimination.

Most importantly, although racial discrimination is alleged in her complaint, Sample does not allege any specific incidents based on racial discrimination regarding her employment in the Shelton, Connecticut store. The only allegations of racial discrimination were the Georgia incidents which were previously dismissed by the Court. The first specific mention of racial discrimination in the Shelton store comes in Sample's deposition. The Court finds that Wal–Mart has met its burden of proof under Title VII, and that the reasons given for Sample's termination were not pretextual. As stated above, the elements to prove a *prima facie* case under the Connecticut statute mirror those of Title VII. CFEPA claims are analyzed in the same manner as those under Title VII. *Brittell v. Department of Correction,* 247 Conn. 148, 164, 717 A.2d 1254 (1998). Therefore, given the disposition of the Title VII claims, Sample's CFEPA claim must also fail.

Under Title VII, a court, in its discretion, may award attorneys' fees to the prevailing party, pursuant to 42 U.S.C. § 2000e–5(k). The amount of the fee must be determined by the facts of each case. In the present case, the Court directs the defendant to submit by separate motion its request for specific court costs and attorneys' fees.

For the reasons set forth above, the defendant's motion for summary judgment (Doc. # 30) is GRANTED on all remaining counts and the case is DISMISSED.