VIRGINIA RIGGIO *v.* ORKIN EXTERMINATING COMPANY, INC.
(AC 18910)

O'Connell, C. J., and Mihalakos and Zarella, Js.[1]

---

[1] The listing of judges reflects their seniority status on this court as of the date of oral argument.

310

Argued January 20—officially released June 20, 2000

*Linda L. Morkan*, with whom, on the brief, were *David Thomas Ryan* and *Brian O'Donnell*, for the appellant (defendant).

*Timothy J. Fitzgerald*, with whom, on the brief, was *Douglas T. Barall*, for the appellee (plaintiff).

*Opinion*

O'CONNELL, C. J. The defendant appeals from the judgment of the trial court rendered in favor of the plaintiff after a hearing in damages on the plaintiff's claims of breach of contract, negligence and unfair trade practices. The hearing in damages was conducted after a default was entered against the defendant for failure to comply with a court order relative to the plaintiff's discovery requests. The defendant claims that the court improperly (1) refused to open the default entered against it, (2) awarded damages that were not recoverable under either the plaintiff's contract or negligence claims and (3) awarded attorney's fees without sufficient evidence and without affording the defendant an opportunity to be heard. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. The plaintiff homeowner commenced this action against the defendant extermination company in February, 1997. The plaintiff sought money damages relating to damage to her home resulting from its infestation by termites following extermination treatments by the defendant pursuant to a contract for services. The complaint set forth four counts alleging (1) breach of contract, (2) breach of warranty and guarantee, (3) negligence and (4) violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.

On May 1, 1997, the plaintiff served the defendant with interrogatories. When the defendant failed to respond within thirty days, as required by Practice Book § 13-7 (a), the plaintiff on June 2, 1997, filed a motion to compel. The defendant on June 16, 1997, filed an opposition to the plaintiff's motion to compel, and on June 17, 1997, the court ordered the defendant to answer the interrogatories within thirty days or a default would enter.

When the defendant failed to comply with the court's June 17, 1997 order, a default entered against the defendant, and on August 13, 1997, the plaintiff claimed the matter to the hearing in damages list. On September 15, 1997, the defendant filed a motion to open the default, alleging inadvertence in its failure to comply with the discovery requests and stating that discovery materials were forwarded to the plaintiff by facsimile and by regular mail contemporaneously with the filing of the motion. The court on September 29, 1997, denied the defendant's motion to open.

On November 10, 1997, the defendant filed a motion for reconsideration of the court's denial of the motion to open the default, alleging that the defendant's failure to comply in a timely manner with the plaintiff's discov-

ery requests was due to inadvertence and that there existed a good and valid defense to the action. On November 13, 1997, the plaintiff filed an objection to the defendant's motion for reconsideration, alleging that the defendant had not provided any new information in its motion that would warrant reconsideration of the court's denial of the motion to open the default. On December 8, 1997, the court denied the defendant's motion for reconsideration, and the matter was scheduled for a hearing in damages.

A hearing in damages was held from May 27 through 29, 1998, and on September 21, 1998, the court rendered judgment for the plaintiff, awarding her $100,000 in compensatory damages and $33,000 in attorney's fees under CUTPA for a total judgment of $133,000 plus costs. The court declined to award punitive damages under CUTPA. The defendant appealed from the judgment on October 13, 1998.

Pursuant to Practice Book § 66-5, the defendant filed a motion for articulation, requesting that the trial court identify which portions of the damages award arose from the plaintiff's contract claim and which portions arose from the negligence claim. The court denied the motion. The defendant then filed a motion for review of the trial court's ruling. This court granted review, but denied the relief requested.

I

The defendant first claims that the court improperly refused to open the default entered against it. "[The] determination of whether to set aside [a] default is within the discretion of the trial court . . . and will not be disturbed unless that discretion has been abused or where injustice will result." (Citation omitted; internal quotation marks omitted.) *Higgins* v. *Karp*, 243 Conn. 495, 508, 706 A.2d 1 (1998). "The scope of review by this court on a claim that the trial court abused its

discretion is well settled. [E]very reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Internal quotation marks omitted.) *Higgins* v. *Karp*, 239 Conn. 802, 808, 687 A.2d 539 (1997).

The court denied the defendant's motion to open the default without written or oral decision. The defendant did not seek to have the court articulate its basis for denying the motion. "The burden of securing an adequate record for appellate review of an issue presented on [appeal] rests with the [appellant]." (Internal quotation marks omitted.) *Anderson* v. *Schieffer*, 35 Conn. App. 31, 45, 645 A.2d 549 (1994). The defendant has failed to provide us with a written memorandum of decision or a transcribed oral decision of the court stating its reasons for denying the motion to open. See Practice Book § 64-1 (a). "We, therefore, are left to surmise or speculate as to the existence of a factual predicate for the trial court's rulings. Our role is not to guess at possibilities, but to review claims based on a complete factual record developed by the trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court, either on its own or in response to a proper motion for articulation, any decision made by us respecting this claim would be entirely speculative." (Internal quotation marks omitted.) *Alix* v. *Leech*, 45 Conn. App. 1, 5, 692 A.2d 1309 (1997). In view of the inadequate record, we cannot ascertain why the court denied the motion to open and, therefore, we decline to review this claim.

II

The defendant next claims that the court improperly awarded damages that were not recoverable under either the plaintiff's contract or negligence claims. The

defendant claims that (1) the evidence presented at the hearing in damages establishes that the plaintiff is not entitled to the awarded damages pursuant to the contract between the parties and (2) the plaintiff failed to establish that the defendant's negligence caused her any damage.

"The entry of a default constitutes an admission by the defendant of the truth of the facts alleged in the complaint. . . . The plaintiff still must prove [at a hearing in damages] how much of the judgment prayed for in the complaint he is entitled to receive." (Citations omitted; internal quotation marks omitted.) *DeBlasio* v. *Aetna Life & Casualty Co.*, 186 Conn. 398, 400, 441 A.2d 838 (1982). "Although a defendant may not contest liability if he has failed to notify the plaintiff of his intention to do so . . . a defendant may contest the amount of damages."[2] *Marcus* v. *DuPerry*, 25 Conn. App. 293, 296, 593 A.2d 163 (1991), rev'd in part on other grounds, 223 Conn. 484, 611 A.2d 859 (1992). The question to be considered is whether the court's damages award is appropriate under either the plaintiff's negligence or contract claims.

The court found the following additional facts. On October 6, 1993, the defendant inspected the plaintiff's home, determined that there were active termites in the garage and house, and the parties entered into a contract for extermination services. The plaintiff's first termite extermination treatment by the defendant consisted of the laying of a protective barrier outside the plaintiff's house to keep termites from entering and to kill the termites already inside the house by depriving them of moisture. The plaintiff was told that this initial

---

[2] The defendant failed to take advantage of Practice Book § 17-34, which permits defaulted defendants to challenge the allegations in the plaintiff's complaint at the hearing in damages if "notice has been given to the plaintiff of the intention to contradict such allegations and of the subject matter which the defendant intends to contradict . . . ."

treatment would take care of her termite problem. The plaintiff, however, purchased an extended warranty plan that would cover her for any reinfestation. Within four months of the initial treatment, visual signs of termites reappeared in the plaintiff's house. The defendant returned to the plaintiff's house seven times in 1994 to again treat areas of reinfestation. In January, 1995, the defendant gave the plaintiff a one year free renewal of her service contract, citing as the reason on the renewal form, "[H]ave had several retreats done due to an improper treatment on initial service."

The defendant returned to the plaintiff's property approximately twenty-seven times from 1994 to 1998 to treat areas of massive reinfestation. Eventually, the bathroom and the basement in the plaintiff's house had to be completely gutted due to termite damage. In addition, significant damage was done to the plaintiff's garage, kitchen, foyer and family room. The plaintiff's expert, Paul Sullivan, a contractor, estimated the outstanding damage to the plaintiff's home at $150,172.67. Sullivan initially was sent to the plaintiff's home by the defendant to repair damage to the dining room following a termite infestation in 1995 and had returned to repair various other areas of damage during the four years of treatment by the defendant. The defendant's expert, who repeatedly told the court that he was not a termite expert and could not identify termite damage, estimated that the repairs to the plaintiff's home would cost $31,935.61.

The defendant asserts that the court awarded damages that were outside the scope of the contract between the parties. "Where the contract language relied on by the trial court to resolve the dispute is definitive, the interpretation of the contract is a matter of law and our review is plenary." *Empire Paving, Inc.* v. *Milford,* 57 Conn. App. 261, 265, 747 A.2d 1063 (2000).

The defendant makes two claims in support of its argument that the damages award is not supported by the language of the contract. First, the defendant relies on the contractual language limiting its liability to the repair of "new termite damage" and asserts that there was insufficient evidence from which the court could find new termite damage as opposed to the damage that existed prior to the contract. This claim is without merit. Even absent the admissions imposed on the defendant by the default, the evidence of new termite damage to the plaintiff's home was overwhelming. Throughout the four years of treatment, swarms of termites were discovered behind windowsills, Sheetrock and flooring. Live termites were discovered coming through the Sheetrock into the basement and behind the tiles in the bathroom. The contractor, Sullivan, found termite damage to the sill of the house, the rim board, the main carrying beam, the front foyer carrying beam and found a depression in the kitchen-family room floor. In sum, there was overwhelming evidence of new termite damage for which the defendant was liable under the contract.

Second, the defendant asserts that the contractual language excludes from liability damage that occurs inside walls or in other places that cannot be visually inspected. The defendant, however, misstates this contractual provision. In fact, the contract states: "I specifically agree not to hold [the defendant] responsible for the repair of any *present* damage existing in areas or in structural members of my building which are unexposed or can't be inspected as of the date I sign this Agreement." (Emphasis added.) Pursuant to this language, the defendant still is responsible for new termite damage existing in these areas. As set forth previously, the plaintiff's material allegations of new termite damage in her complaint are deemed admitted by the defendant. Furthermore, even absent this admission, the

evidence presented clearly supports the plaintiff's claim of new damage.

The court awarded the plaintiff $100,000 in compensatory damages. This amount fell between the two amounts cited by the parties' experts. "It is the quintessential function of the finder of fact to reject or accept evidence and to believe or disbelieve any expert testimony. . . . The trier may accept or reject, in whole or in part, the testimony of an expert." (Citation omitted.) *Tartaglino* v. *Dept. of Correction,* 55 Conn. App. 190, 195, 737 A.2d 993, cert. denied, 251 Conn. 929, 742 A.2d 364 (1999). Accordingly, the court's damages award was supportable under the plaintiff's breach of contract and breach of warranty claims. Because we conclude that the court's damages award was supportable under the plaintiff's contract claims, it is unnecessary for us to consider whether the damages award also is supportable under the plaintiff's negligence cause of action.

### III

The defendant's final claim is that the court improperly awarded attorney's fees because the plaintiff failed to introduce evidence as to the reasonableness of the fees, thus depriving the defendant of an opportunity to be heard on that issue.

"The trial court has discretion whether to award attorney's fees under CUTPA and the exercise of such discretion will not ordinarily be interfered with on appeal unless the abuse is manifest or injustice appears to have been done." (Internal quotation marks omitted.) *Lawson* v. *Whitey's Frame Shop,* 42 Conn. App. 599, 608, 682 A.2d 1016 (1996), rev'd on other grounds, 241 Conn. 678, 697 A.2d 1137 (1997). The issue here, however, is not whether attorney's fees should have been awarded within the court's discretion, but rather, whether the court considered the appropriate factors in determining the amount of attorney's fees.

In *Steiger* v. *J. S. Builders, Inc.*, 39 Conn. App. 32, 38, 663 A.2d 432 (1995), this court held that the guidelines set forth in *Johnson* v. *Georgia Highway Express, Inc.*, 488 F.2d 714, 715 (5th Cir. 1974), for calculating reasonable attorney's fees are appropriate in CUTPA cases.[3] Our review of whether the court correctly applied the factors and whether the award of attorney's fees is reasonable is limited to a consideration of whether the court's action was in abuse of its discretion. *Steiger* v. *J. S. Builders, Inc.*, supra, 39.

The defendant first asserts that the court was required by *Steiger* to consider all twelve of the *Johnson* factors before making an award of attorney's fees. The defendant mischaracterizes the law of *Steiger.* The court in *Steiger* held only that in determining what is a reasonable attorney's fee award, the trial court abuses its discretion if it considers only one of the twelve factors and completely excludes and disregards all of the others. Id. Thus, the court in this case was not required to consider each of the twelve factors individually, but instead was required to consider the full panoply of factors and not base its decision solely on one of the elements.

The defendant further asserts that the sole evidentiary basis for the court's award of attorney's fees in this case was the plaintiff's testimony that she has a

---

[3] The court in *Steiger* v. *J. S. Builders, Inc.*, supra, 39 Conn. App. 38, adopted the twelve factors set forth in *Johnson* v. *Georgia Highway Express, Inc.*, supra, 488 F.2d 715, which include: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Steiger* v. *J. S. Builders, Inc.*, supra, 38.

contingency fee arrangement with her attorney. The defendant claims that the court abused its discretion under *Steiger* because it considered only one of the twelve *Johnson* factors to the complete exclusion of the other eleven factors. The defendant mischaracterizes the court's consideration. Although the court's award was based on the figure that would result from the one-third contingency fee arrangement, the court clearly considered whether this fee was reasonable pursuant to the *Steiger* guidelines. In its memorandum of decision, the court specifically recognized that it was required to consider the twelve factors set forth in *Steiger* and held that "[i]n determining whether the fees which would be generated under that arrangement should be allowed, the court considers the legal questions presented, the skill required to present the case, the amount in controversy, the experience of the attorney, the case itself, and the time required to put the case together, to plead it, to try it and to prepare the pretrial and posttrial briefs. This was a hearing to the court which ran three and one-half days, with expert testimony and extensive pretrial and posttrial briefs. There were extensive pretrial motions, some of which involved preclusion issues as well as issues dealing with experts and site inspections. Based on the aforesaid considerations the court awards attorney's fees in the amount of the one-third contingency fee arrangement entered into between the plaintiff and her attorney." A separate evidentiary hearing on the reasonableness of the attorney's fees was not mandatory and, given that the court properly considered the *Steiger* factors in determining the reasonableness of the attorney's fees, the court's consideration was clearly within the legitimate exercise of its discretion.

The judgment is affirmed.

In this opinion the other judges concurred.