Juan FABRI, Sr., et al., Plaintiffs,

v.

UNITED TECHS.  INT'L, INC.
et al., Defendants.

No.  CIV.  3:96CV2358(PCD).

United States District Court,
D. Connecticut.

March 29, 2002.

Edward T. Krumeich, Miles F. McDonald, Jr., Deirdre A. Martini, Deborah A. Kelly, Ivey, Barnum & O'Mara, Greenwich, CT, Al Van Kampen, Van Kampen & Associates, Seattle, WA, Bruce G. MacIntyre, William D. Fisher, Perkins & Coie, Seattle, WA, William Ivar Haslun, II, Greenwich, CT, for Juan F. Fabri, Sr., Juan F. Fabri, Jr., plaintiffs.

Craig A. Raabe, Steven R. Humphrey, Bradford S. Babbitt, Marion B. Manzo, Robinson & Cole, Hartford, CT, for United Tech Intl, United Technologies Corp., Sikorsky Aircraft Div United Tech Corp, defendants.

## RULING ON PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

DORSEY, Senior District Judge.

Plaintiffs move for attorneys' fees under the Connecticut Unfair Trade Practices Act ("CUTPA"). The motion is denied without prejudice.

## I. BACKGROUND

### A. Factual Background

Plaintiffs, Juan F. Fabri, Sr. and Juan F. Fabri, Jr. (collectively, "Fabris"), are Argentine citizens. Pursuant to written agreements (the "SRA"), they served as sales representative for divisions and subsidiaries of United Technologies Corporation, including United Technologies International and Sikorsky Aircraft Corporation (collectively, "Defendants"). As part of the SRA, the Fabris warranted compliance with the Foreign Corrupt Practices Act ("FCPA"), 15 U.S.C. §§ 78dd–1 *et seq.*

Based on the report of a bribe solicitation and statements related thereto by Mr. Fabri, Jr., Defendants engaged O. Thomas Johnson, an expert in foreign corruption investigations, to investigate whether there was any commitment to make an improper payment to an Argentine official in connection with a helicopter sale by Sikorsky. Mr. Johnson concluded that there were a number of "red flags" or signals of such a commitment that could violate the FCPA. The SRA permitted Defendants to terminate the Fabris if they had a "reason to believe" that the Fabris had violated contractual representations and warranties, in which they undertook not to make or promise any corrupt payments. Mr. Johnson recommended that Defendants terminate the Fabris, which was subsequently done. The Fabris were terminated and were not paid commissions, Defendants having concluded that such could result in FCPA violations.

## B. Procedural History

The Fabris brought suit on November 21, 1996. Ivey, Barnum & O'Mara ("IB & O") appeared as local counsel. Bogle & Gates ("B & G"), original lead counsel, dissolved and withdrew its representation; IB & O continued with assistance from Attorney Al Van Kampen.

After five years of litigation and a five-week trial, the jury found for Defendants on all counts except a CUTPA claim,[1] on which the jury awarded the Fabris $1 nominal damages and $500,000 punitive damages.[2] Defendants' motion for judgment as a matter of law was denied. The Fabris now move for $1,583,002.26 in attorneys' fees pursuant to Conn. Gen. Stat. § 42–110g(d).

## II. DISCUSSION

### A. The Fabris' Entitlement to Attorneys' Fees

■ Defendants first argue that the Fabris are not entitled to an award of attorneys' fees, as the jury rejected all claims except one, on which they received no compensatory damages. The argument is without merit.

Defendants' argument rests on the Supreme Court cases of *Farrar v. Hobby*, 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) and *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). These cases were decided under 42 U.S.C. § 1988.[3] The Fabris prevailed under CUTPA. As was held in denying Defendants' motion for judgment as a matter of law, "[t]his case is a state law case as to fees." Accordingly, this court looks in the first instance to the CUTPA statute, not to § 1988, in determining the propriety of an award of attorneys' fees. Defendants' attempt to link case law interpreting § 1988 to CUTPA is unconvincing,[4] particularly in the face of contrary CUTPA case law.[5]

Moreover, the Supreme Court case law to which Defendants cite, *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604 n. 6, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001) ("in some circumstances [a party who receives only nominal damages] should still not receive an award of attorney's fees"); *Farrar*, 506 U.S. at 115, 113 S.Ct. 566, does not stand for the proposition that courts *must* not award attorneys' fees to a plaintiff who has won only nominal dam-

1. The jury rejected claims for breach of written contract, breach of oral contract, promissory estoppel, quantum meruit, and tortious interference with business relations. The claim for breach of good faith and fair dealing was submitted as part of the contract claims. Not submitted to the jury were claims for equitable estoppel, invasion of privacy, and unjust enrichment.

2. The punitive damages award was "$500,000 plus attorneys' fees." The Fabris concede that the "attorneys' fees" language is mere surplusage and so look only to the CUTPA statute for attorneys' fees. *See Larsen Chelsey Realty Co. v. Larsen*, 232 Conn. 480, 517, 656 A.2d 1009 (1995).

3. The fee statute, 42 U.S.C. § 1988(b), reads, "In any action proceeding to enforce [various civil rights laws], the court, in its discretion,

may allow the prevailing party ... a reasonable attorney's fee as part of the costs ...."

4. Defendants' argument is essentially this. Connecticut court have adopted the *Johnson* factors for determining reasonable attorneys' fees under CUTPA. The *Johnson* factors were based on the 1964 Civil Rights Act fee provisions. Fees awards under the 1964 Civil Rights Act are basically the same as under § 1988. So in CUTPA, Connecticut courts should look to § 1988 case law.

5. Indeed, *Sorrentino*, the Connecticut Supreme Court case upon which Defendants rely heavily for their argument that an award of attorneys' fees should be capped at the amount of a contingent fee agreement, makes no mention of 42 U.S.C. § 1988 or its progeny.

ages. Rather, they stand for the proposition that, under § 1988, trial courts *may* decline to award attorneys' fees to a plaintiff who has won only nominal damages. Even if the statutory foundation for those cases were the same as the present case, not awarding any fee would be inappropriate in this case.

Defendants' argument ignores the punitive damages that the Fabris claimed, proved, and won. Such a result is more than technical or nominal. Accordingly, an award of reasonable fees is found to be appropriate. The argument that the punitive damages verdict cannot sustain an attorneys' fee award as such verdict is contrary to the CUTPA statute fails as the latter premise was rejected in the ruling on Defendants' motion for judgment as a matter of law.

■ Lastly, CUTPA provides that awards are to be "based on the work reasonably performed by an attorney and not on the amount of recovery." CONN. GEN. STAT. § 42–110g(d). Even if this court were to look only to the $1 in nominal damages, to award no fee would be contrary to the express language that attorneys' fees not be based "on the amount of recovery." A plaintiff may recover attorneys' fees in a CUTPA case even when awarded no compensatory damages. *Jacques All Trades Corp. v. Brown*, 57 Conn.App. 189, 197–98, 752 A.2d 1098 (App.2000).

**B. Contingent Fee Agreement**

■ The Fabris entered into a contingent fee agreement with IB & O which entitled the lawyers to 35% of the Fabris' total recovery, where the total recovery

includes any award for attorneys' fees.[6] Defendants argue that any award of attorneys' fees should be capped by the amount the Fabris agreed to pay their counsel.[7] The argument is without merit. A CUTPA fee award is not capped by a contingent fee agreement.

*1. The text of the CUTPA statute*

Capping an award by a contingent fee agreement is contrary to the explicit text of CUTPA. When a "trial court ignores the plain meaning of the words contained" in a statute, it "violates a basic tenet of statutory construction." *Thibeault v. White*, 168 Conn. 112, 115, 358 A.2d 358 (1975); *see also IBM Corp. v. Brown*, 167 Conn. 123, 134, 355 A.2d 236 (1974) ("The statute must be applied as its words direct."). CUTPA reads, "[T]he court may award, to the plaintiff, in addition to the relief provided in this section, costs and reasonable attorneys' fees based on the work reasonably performed by an attorney and not on the amount of recovery." CONN. GEN. STAT. § 42–110g(d). The statute instructs on what such an award must be based and on what it must not be based. The argument flies in the face of both.

CUTPA instructs a trial court to base an award "on the work reasonably performed by an attorney." A trial court must assess the attorney's reasonable work on behalf of his or her client. The statute does not relate an award to a contingent fee agreement nor is such even obliquely mentioned. Moreover, the statute specifically directs that an award not be based on "the amount of recovery." The contingent fee

---

**6.** The percentage jumps to 40% if the Fabris prevail on appeal. It is not clear whether litigation costs and expenses are included as part of this percentage, are in addition to and to be paid before applying the percentage, or are in addition to and to be paid after applying the percentage. For purposes of this ruling, this court will use 35% to simplify the discussion.

**7.** The amount would be $269,231.31, since this is 35% of $500,001 plus $269,231.31.

in this case is a percentage of the total award. A fee award capped by a contingent fee agreement would be capped by, and thus based on, the amount of recovery. Defendants' argument would do what the statute expressly precludes, namely, to base a CUTPA award on the amount of recovery, rather than the reasonable work performed by an attorney. As contrary to CUTPA, Defendants' argument is without merit.

### 2. The Connecticut Supreme Court case of Sorrentino

In support of their argument, Defendants cite *Sorrentino v. All Seasons Services, Inc.*, 245 Conn. 756, 717 A.2d 150 (1998), which held that "[a] trial court should not depart from a reasonable fee agreement in the absence of a persuasive demonstration that enforcing the agreement would result in substantial unfairness to the defendant." *Id.* at 776, 717 A.2d 150. The holding is not on point.

*Sorrentino* presented the question of whether a contingent fee agreement should be a floor to a reasonable fee award under the Connecticut Workers' Compensation Act ("WCA"). *See id.* at 758, 773, 717 A.2d 150. The trial court had held that the reasonable award for the plaintiff's attorney was less than the amount provided in a contingent fee agreement. *Id.* at 774, 717 A.2d 150. The trial court gave two reasons: that the original amount included work by non-attorneys and that the original amount included separate billing for two lawyers for work performed simultaneously. *Id.* The plaintiff appealed for the full amount of fees under the contingent fee agreement. *Id.* at 773, 717 A.2d 150. The Connecticut Supreme Court reversed the trial court, holding that its two reasons for reducing the fee award were not sufficient. *Id.* at 776–77, 717 A.2d 150. It went on to hold that the award should be raised to the amount of the contingent fee. *Id.*

*Sorrentino* does not control here. As a preliminary matter, the two errors on which the reversal of the trial court were based are not argued in the present case.

Moreover, *Sorrentino* dealt with a different statute. There, the plaintiff sued under the WCA, CONN. GEN. STAT. § 31–275 *et seq.*, for retaliatory discharge. *Sorrentino*, 245 Conn. at 758, 717 A.2d 150. After prevailing at a jury trial, he sought attorneys' fees under CONN. GEN. STAT. § 31–290a(b)(1). *Id.* at 773–74, 717 A.2d 150. The Fabris seek fees under CUTPA. The two fee statutes are materially different. The WCA fee statute provides that "[a]ny employee who prevails in such a civil action shall be awarded reasonable attorney's fees and costs to be taxed by the court," CONN. GEN. STAT. § 31–290a(b)(1), thus requiring a trial court to inquire into what is "reasonable." The *Sorrentino* court looked to the eight factors of Rule 1.5(a) of the Rules of Professional Conduct. 245 Conn. at 775, 717 A.2d 150. Under CUTPA "the court may award ... costs and reasonable attorneys' fees." CONN. GEN. STAT. § 42–110g(d). The criteria for the reasonableness of a CUTPA fee award is "the work reasonably performed by an attorney" and is not to be "the amount of recovery." The WCA contains neither criteria for what may constitute a reasonable attorney fee. *Sorrentino* required under the WCA a simple determination of reasonableness. 245 Conn. at 775–77, 717 A.2d 150. Conversely, CUTPA requires that attorneys' fees be related to "the work reasonably performed by an attorney" and not to "the amount of recovery." *Sorrentino* is inapplicable.

Even construing *Sorrentino* to apply to all state fee statutes, it holds at best that contingent fee agreements are a floor to a reasonable award. Defendants would extend *Sorrentino* beyond its facts and transform contingent fee agreements into

a ceiling. Had *Sorrentino* allowed the trial court's fee award to stand, the plaintiff would have received an attorneys' fee award less than he would have had to pay to his attorney under their contingent fee agreement. Thus, he would have had to pay his attorney some of the compensation due him per the jury. Making contingent fee agreements a floor in WCA cases protects the amount awarded by the jury for a plaintiff's injury. There is no parallel need to make contingent fee agreements into a ceiling to protect a plaintiff's jury award. As such, *Sorrentino* need not be extended beyond its facts as Defendants would do.

Indeed, cases arising before *Sorrentino* reached this same conclusion. *See Boulevard Assocs. v. Sovereign Hotels, Inc.,* 868 F.Supp. 70, 73 (S.D.N.Y.1994) ("The existence of contingen[t] fee agreements ma[kes] no difference in the award of attorney's fees under CUTPA."); *Jones v. Ippoliti,* No. CV9353116S, 1995 WL 493782, at *23 (Conn.Super.Ct. Aug.7, 1995) ("any contingency fee agreement is not controlling"), *aff'd on other grounds,* 52 Conn.App. 199, 727 A.2d 713 (App.Ct. 1999). *Sorrentino* did not address or overrule these cases, and their reasoning is still sound. Connecticut cases arising after *Sorrentino* reached this same conclusion, and their reasoning is still sound. *See Bristol Tech., Inc. v. Microsoft Corp.,* 127 F.Supp.2d 64, 79 (D.Conn.2000) ("Such agreements should not dictate the court's award, however, since the criterion is not what the parties agreed to but what is reasonable."); *Kay v. Seiden,* No. CV946048587S, 1999 WL 621460, at *6 (Conn.Super.Ct. Aug.4, 1999).

### 3. Policy arguments

Defendants also argue that a fee award greater than a plaintiff must pay his or her attorney is in effect an additur and grants compensation beyond a jury verdict. Defendants' erroneous (and circular) argument assumes that the "proper" amount a defendant must pay a CUTPA plaintiff is the jury award plus the amount the plaintiff must pay his or her attorney. Only then would a greater amount be seen as an additur. Rather, the proper amount a defendant must pay under CUTPA is the jury award plus, if awarded, "costs and reasonable attorneys' fees based on the work reasonably performed by an attorney and not on the amount of recovery." CONN. GEN. STAT. § 42–110g(d).

Defendants look to § 1988 case law for support for their position. *See Hensley,* 461 U.S. at 434, 103 S.Ct. 1933 ("[h]ours that are not properly billed to one's *client* also are not properly billed to one's *adversary* ") (citation omitted; emphases in the original); *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714, 718 (5th Cir. 1974) ("[i]n no event, however, should the litigant be awarded a fee greater than he is contractually bound to pay"), *abrogated in relevant part by Blanchard v. Bergeron,* 489 U.S. 87, 93, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989) ("a contingent-fee contract does not impose an automatic ceiling on an award of attorney's fees, and to hold otherwise would be inconsistent with [§ 1988] and its policy and purpose"). As discussed above, § 1988 case law is unpersuasive. This is a state law case as to fees, not federal. Moreover, the rights vindicated here are consumer and business rights, not civil rights, and as such, attorneys' fees can be expected to serve somewhat different remedial purposes. Lastly, the federal statute merely allows the court to grant "a reasonable attorney's fee," 42 U.S.C. § 1988, and does not include the additional relevant language of CUTPA, that the such an award be "based on the work reasonably performed by an attorney and not on the amount of recovery," CONN. GEN. STAT. § 42–110g(d). *See Thames River Recycling, Inc. v. Gallo,* 50 Conn.App. 767, 795, 720 A.2d 242 (App.Ct.1998) ("The

award of attorney's fees ... under CUTPA has some features not common to such awards in other types of cases. For example, ... the amount of attorney's fees that a trial court may award is based on the work reasonably performed by an attorney and not on the amount of recovery.") (citation omitted).

A fee award is an obligation of a defendant to a plaintiff. A contingent fee agreement is an agreement between a plaintiff and his or her counsel, an agreement to which a defendant is not a party, and which should not be permitted to alter the purpose of the statutory award.

As an additional consideration, a contrary outcome would undermine the CUTPA public policy to promote private attorney generals to bring lawsuits to vindicate important rights. *See Gill v. Petrazzuoli Bros., Inc.,* 10 Conn.App. 22, 33, 521 A.2d 212 (App.Ct.1987). Unfair trade practices may involve large numbers of consumers or sophisticated transactions. Such complex cases require a great amount of litigation effort with the concurrent risk that recovery may be small. A rule which capped attorneys' fees at the contingent fee amount may dissuade attorneys from taking such cases, *see Hinchliffe v. Am. Motors Corp.,* 184 Conn. 607, 617, 440 A.2d 810 (1981) ("The ability to recover ... attorneys' fees ... enhances the private CUTPA remedy and serves to encourage private CUTPA litigation."); *Freeman v. Alamo Mgmt. Co.,* 24 Conn.App. 124, 133, 586 A.2d 619 (App.Ct.1991) ("In order to encourage attorneys to accept and litigate CUTPA cases, the legislature has provided for the award of attorney's fees and costs."), *reversed on other grounds,* 221 Conn. 674, 607 A.2d 370 (1992), especially when as in the present case, the contingent fee agreement pays the attorneys a percentage of the total recovery, not just a percentage of the jury verdict. A CUTPA fee award compensates the attorney for work reasonably required and done for the plaintiff. When instead limited, as Defendants would do here by the contingent fee agreement, the attorney might not be fully compensated for the work reasonably required and done to prosecute a case as the facts and law require. Such a result would be contrary to the purpose of the fee-shifting statute, to encourage the prosecution of meritorious claims for violation of the substantive provisions of CUTPA.

## C. Amount of Award

CUTPA "leav[es] it to the sole discretion of the trial court to determine ... the amount of such an [attorneys' fee] award." *Staehle v. Michael's Garage, Inc.,* 35 Conn.App. 455, 461, 646 A.2d 888 (App. Ct.1994); *see also Gill,* 10 Conn.App. at 34, 521 A.2d 212 ("the award of attorney's fees has been placed in the hands of the court"). In determining reasonable attorneys' fees, courts typically begin with the lodestar method. *See Societa Bario E. Derivati, S.p.A. v. Kaystone Chem., Inc.,* No. 5:90cv599(EBB), 1998 WL 182563, at *11 (D.Conn. Apr. 15, 1998) ("strong presumption that the lodestar figure represents a reasonable fee"); *see also Kaplan v. Gruder,* No. CV960334308S, 2000 WL 767679, at *1 (Conn.Super.Ct. May 25, 2000); *Kay,* 1999 WL 621460, at *3. The lodestar method uses the number of hours reasonably expended in the litigation (excluding excessive, redundant, or otherwise unreasonable hours) multiplied by the prevailing market rates for the services rendered. *See generally Kay,* 1999 WL 621460, at *3. Whether a trial court uses the lodestar method as an aid, a trial court should apply the twelve *Johnson* factors. *See Hernandez v. Monterey Vill. Assocs. Ltd. P'ship,* 24 Conn.App. 514, 517 n. 3, 589 A.2d 888 (App.Ct.1991). The factors are (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal

service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717–19.[8] A court is "not required to consider each of the twelve factors individually, but instead [is] required to consider the full panoply of factors and not base its decision solely on one of the elements." *Riggio v. Orkin Exterminating Co.*, 58 Conn.App. 309, 318, 753 A.2d 423 (App.Ct.), *cert. denied*, 254 Conn. 917, 759 A.2d 507 (2000).

### 1. Summary of asserted attorneys' fees and expenses

B & G was the initial lead counsel but was dissolved in 1999. By way of affidavits of Mr. Van Kampen, they assert $684,113 in attorneys' fees [9] and $88,646 in expenses.[10] Mr. Van Kampen subsequently was part of two different law firms, Van Kampen & Associates and then Burkett, Burdette & Van Kampen, which collectively assert $307,820 in attorneys' fees [11] and $19,469.02 in expenses.[12] The three law firms collectively assert $93,280 in third-party billing from the law firm of Foley & Lardner.[13] The subsequent lead counsel of IB & O asserts, by way of affidavits of Edward Krumeich, $316,135.44 in attorneys' fees and expenses.[14] The Fabris as-

8. When the inquiry is into whether the contingent fee agreement itself is reasonable, instead of into the amount of a reasonable award, the Connecticut Supreme Court in *Sorrentino* listed different factors to be considered. 245 Conn. at 775, 717 A.2d 150 (listing the factors of Rule 1.5(a) of the Rules of Professional Conduct). Neither side asserts that the fee agreement here is unreasonable.

9. Mr. Van Kampen originally asserts, (*see* Dkt. No. 242), that B & G had "in excess of $700,000 in legal fees." He then subtracts $20,000, the amount he asserts is work by B & G that was not "utilized in connection with the CUTPA claim." By supplemental affidavit, (*see* Dkt. No. 268), he revises his "in excess of $700,000" number to assert an additional $4,113.

10. Mr. Van Kampen asserts, (*see* Dkt. No. 242), that B & G had $141,355 in total expenses, less $52,709 in third-party billing by Foley & Lardner included separately elsewhere.

11. Mr. Van Kampen originally asserts, (*see* Dkt. No. 242), $285,452 in attorneys' fees. By supplemental affidavit, (*see* Dkt. No. 268), he asserts an additional $18,598 in attorneys' fees and expenses. This additional figure appears to include the $3,000 he previously asserted, (*see* Dkt. No. 242), in preparing the present motion for attorneys' fees. By further supplemental affidavit, (*see* Dkt. No. 272), he asserts an additional $1,540 in attorneys' fees. By further supplemental affidavit, (*see* Dkt. No. 277), he asserts an additional $1,230 in attorneys' fees.

12. Mr. Van Kampen originally asserts, (*see* Dkt. No. 242), $19,382 in expenses. By supplemental affidavit, (*see* Dkt. No. 272), he asserts an additional $70.90 in expenses. By further supplemental affidavit, (*see* Dkt. No. 277), he asserts an additional $16.12 in expenses.

13. (*See, e.g.,* Dkt. No. 242.)

14. Mr. Krumeich originally asserts, (*see* Dkt. No. 239), $305,980.51 in attorneys' fees and expenses. He then subtracts $7,500, the amount he asserts is "attributable to services unrelated to the CUTPA claim." By supplemental affidavit, (*see* Dkt. No. 267), he asserts an additional $9,762.50 in attorneys' fees. By further supplemental affidavit, (*see* Dkt. No. 273), he asserts an additional $4,365 in attorneys' fees and $34.93 in expenses. By further supplemental affidavit, (*see* Dkt. No. 276), he asserts an additional $3,492.50 in attorneys' fees.

sert, by way of affidavit of Mr. Fabri, Jr., $47,943.26 in expenses.[15] The total attorneys' fees and expenses, after deducting for concededly non-CUTPA-related work, asserted by the Fabris is $1,557,406.72.

### 2. Record insufficient to support an award of fees

A fee applicant bears the burden of providing documentation to prove that an amount of time was billed and expended at a reasonable hourly rate. *F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250, 1265 (2d Cir.1987). The record submitted by the Fabris is insufficient to support an award of fees. An outline of the disputed issues in the case follows.

### a. Reduction for B & G's lack of billing records

Defendants assert that B & G has failed to produce any time records after October 1998. Defendants argue that the failure to prove fees for services rendered after this date should preclude the Fabris from recovering this amount as attorneys' fees. The Fabris concede that B & G records are unavailable after October 31, 1998, at which time the billing was $640,459. However, they respond by asserting that they have computer summary printouts which show fees of $704,113 as of November 30, 1998. They also assert additional hours expended, not submitted, between November 30, 1998 and February 1999.

This issue is adequately briefed.

### b. Reduction for non-specific billing records

Defendants assert that many entries lack specificity, with billing entries such as "review of file," "review of correspondence," "research," "conference with client," "preparation of brief," "research

CT case law," "legal research," "miscellaneous," "online research," "outside services," "phone," "conference," and "prepare letters."

Defendants decline to identify where among the inches of billing records such ambiguous entries can be found, how frequently they occur, and how much money any ambiguous entries total. Defendants offer the same lack of definiteness of which they complain the Fabris are guilty. For instance, Defendants assert that one entry is marked "miscellaneous" for over $6,000, but they fail to identify where in the Fabris' billing records this can be found. Not only is the court unable to appraise the relative merit of Defendants' argument on its face, but the Fabris are left unable to defend against the assertion.

### c. Reduction for inadmissible polygraph evidence

Defendants argue that the $77,750.50 expended by the Fabris on polygraph evidence should not be allowed. The Fabris assert that the amount is $1,950 and that evidence was related to their CUTPA claim.

In so asserting, the Fabris include only the amount of the polygraph test itself. The Fabris do not provide a breakout of their efforts in unsuccessfully litigating for the inclusion of the evidence.

### d. Reduction for number of trips to Argentina

Defendants argue that the four trips the Fabris' counsel took to Argentina were excessive, only one of which was necessary. The Fabris counter that they only took two trips, both of which were necessary.

---

**15.** (*See* Dkt. No. 241 (executing arithmetic based on numbers submitted, not erroneous subtotals).)

Neither party submits dates of the trips to permit the court to compare how many trips were taken. The Fabris do not provide a breakout of the total cost of each trip.

### e. Reduction for billing for travel time

■ Defendants argue that the $30,000 billed in travel time is excessive. The Fabris counter that legal work was generally performed while traveling. Travel time spent working and preparing the present case is recoverable. *See Gonzalez v. Town of Stratford*, 830 F.Supp. 111, 115 (D.Conn.1992). "[A] different rate of compensation may well be set for different types of litigation tasks." *Cohen v. W. Haven Bd. of Police Comm'rs*, 638 F.2d 496, 505 (2d Cir.1980). Travel time spent resting or not working is not appropriately billed at the full rate. *Williams v. N.Y. City Hous. Auth.*, 975 F.Supp. 317, 324 (S.D.N.Y.1997) (50% of hourly rate). The Fabris concede that not all time while traveling was spent performing legal work.

The Fabris do not provide a breakout of the time spent in traveling but performing legal work and time that was not.

### f. Reduction for number of attorneys traveling to depositions

Defendants argue that on occasions, two attorneys traveled to depositions, when only one would have been necessary. The Fabris also assert that Defendants had an equal or greater number of attorneys at the depositions. This goes to show only that Defendants may have also been unreasonable in how much time and money they spent on the depositions. Mr. Van Kampen adds in every such instance, two depositions were being taken simultaneously. What is missing from Mr. Van Kampen's assertion is that it was reasonably necessary to take two depositions simultaneously instead of consecutively. If they had been held consecutively, it would made unnecessary the non-deposition time (such as travel) by one of the attorneys.

The Fabris do not provide a breakout of the non-deposition time (such as travel) spent by each attorney in taking the depositions.

### g. Reduction for researching desirability of non-Connecticut jurisdictions

Defendants argue that the time spent in researching the appropriateness of bringing suit in non-Connecticut jurisdictions was wasteful and not reasonably necessary since the suit was eventually brought in Connecticut. In expectation of large and complex litigation, it is not unreasonable to strategically consider which jurisdiction affords the best opportunities for success.

Of the time that was spent, Defendants do not identify how much they consider unreasonable.

### h. Reduction for first acting as local counsel then as lead counsel

Defendants argue that fees should be reduced because IB & O was first local counsel and then later acted as lead counsel. Although Mr. Van Kampen remained in the case, this required some additional effort by IB & O to become familiar with information with which former B & G attorneys were already familiar.

This issue is adequately briefed.

### i. Reduction for local counsel fees

Defendants argue that IB & O's local counsel fees should be disallowed. Apart from any extra fees caused by the dissolution of B & G, they argue that the $20,034 billed by IB & O as local counsel fees should be disallowed because such fees would have been unnecessary if the lead counsel had been a Connecticut law firm.

This issue is adequately briefed.

*j. Reduction for duplication in effort*

The Fabris had three attorneys present during the five-week trial. Only two were reasonably necessary for the prosecution of this case. That Defendants had three attorneys present at trial goes to show only that Defendants may have also been unreasonable in how much time and money they spent on attorneys present at trial. If they found over two attorneys necessary, that the Fabris did likewise is a questionable complaint. A third attorney, if not present at trial, would have required some time each day to coordinate the relevant details of the day with the two attending attorneys.

The Fabris do not provide a breakout of how much time each attorney spent at trial or in traveling to trial.

*k. Reduction for non-viable claims*

Defendants challenge time spent on all legal theories on which the Fabris were not successful. The jury rejected claims for breach of written contract, breach of oral contract, promissory estoppel, quantum meruit, and tortious interference with business relations. The claim for breach of the duty of good faith and fair dealing was submitted as part of the breach of contract claims. Not submitted to the jury were claims for equitable estoppel, invasion of privacy, and unjust enrichment.

This issue is adequately briefed.

*l. Reduction for excessive fees*

Defendants invite this court to trim excessive fees from the Fabris' requested amount. "Hours that are excessive, redundant, or otherwise unnecessary, are to be excluded, and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir.1998) (internal citations and quotation marks omitted).

This issue is adequately briefed.

*m. Reduction for billing rates of attorneys*

This court is charged with a review of the hourly rates charged by each attorney.

The Fabris do not provide a summary table to make any adjustment in hourly rates practicable. Such a table would include a line item for each attorney (or multiple line items if an attorney's hourly rate has changed over the course of this litigation). Each line item should include the total hours claimed and the hourly rate at which that time was billed. The table should sum to the total attorneys' fees sought, not including expenses. Moreover, affidavits submitted do not include a biography for every attorney that has claimed hours, making an appraisal of some attorneys' proposed hourly rate impracticable.

*n. Reduction for client's personal expenses*

██ Defendants challenge various personal expenses made by Mr. Fabri, Jr. during the litigation of this case. They challenge the $770.92 Mr. Fabri, Jr. charged in movie rentals to his hotel room, the $263.85 for laundry services, the $1,994.96 in telephone charges, the $340 in meals, the $9,772.51 in hotel stays, and the $4777.20 in other travel expenses. Purely personal expenses are not attorneys' fees or costs for purposes of the CUTPA fee statute. *See Sealy Conn., Inc. v. Litton Indus., Inc.*, 93 F.Supp.2d 177, 192–93 (D.Conn.2000) (not allowing travel expenses). However, costs associate with having witnesses travel to the forum from out of the country are reasonably necessary. *See generally Wallace v. Fox*, 7 F.Supp.2d 132, 142 (D.Conn.1998) (travel expenses allowed). Necessary travel and

housing expenses for Mr. Fabri, Jr. to act as a witness were reasonable. They are "disbursements reasonably necessary to prosecute the action." *Jones*, 1995 WL 493782, at *24 (citation omitted).

The Fabris do not provide a breakout of the expenses reasonably necessary for Mr. Fabri, Jr. to act as a witness.

### o. *Reduction for attorneys' personal expenses*

Defendants challenge various personal expenses for the Fabris' counsel's hotel stays and meals.

Defendants do not assert what the amount is, nor may they be in a reasonable position to do so. The Fabris do not provide a summary table for all hotel stays and meals, identifying the litigation task with which they were associated.

### p. *Reduction for excessive witness fees*

Defendants challenge the $93,280 in expert witness fees charged by the Fabris' expert witness, Mr. Weinstein, as excessive.

This issue is adequately briefed.

### q. *Adjustments for the Johnson factors*

Court typically applied the *Johnson* factors to create percentage adjustments to the total amount of attorneys' fees. *See, e.g., Wallace v. Fox*, 7 F.Supp.2d 132, 141 (D.Conn.1998); *Wilkinson v. Forst*, 729 F.Supp. 1416, 1418–19 (D.Conn.1990); *Weseley v. Spear, Leeds & Kellogg*, 711 F.Supp. 713, 717 (E.D.N.Y.1989).

To permit this court to apply appropriate percentage modifications to the attorneys' fees only and not the associated expenses, affidavits must assert not only the total amount sought but rather must separate attorneys' fees sought from expenses sought. The Fabris do not provide such delineation in several of the affidavits they submit.

### 3. *Other issues*

To permit this court and Defendants a meaningful opportunity to review the requested fees, all breakouts should include sufficient supporting documentation.

To permit this court to administer any fee requests reasonably, any subsequent fee motion should be limited to fees already sought. After that, all supplemental fees not yet sought, such as those arising from an appeal, should be consolidated into a single fee motion at the conclusion of litigation. Efforts associated with unnecessary numbers of fee motions would be unreasonable.

## III.  CONCLUSION

Plaintiffs' Motion for an Award of Litigation Expenses, (Dkt. No. 237), is denied without prejudice.

SO ORDERED.